In Re: CHARLES J. WILLIAMS

No. 8110SC1124

(Filed 20 July 1982)

1. **Municipal Corporations § 9.1— police officer—appeal from failure to promote—issue presented**

The trial court did not err in concluding that the sole issue presented to the Raleigh Civil Service Commission by respondent's appeal from a decision of the chief of police not to promote him to the rank of captain was one of "wrongful discrimination" since such issue encompassed respondent's contention that his nonpromotion was a violation of the merit principle even if it was not attributable to racial discrimination.

2. **Municipal Corporations § 9— Civil Service Commission—no authority to promulgate personnel rules**

The Raleigh Civil Service Commission did not have the authority to promulgate rules setting forth essential elements of the "merit principle" in the promotion of municipal employees, since the Raleigh City Council had the ultimate responsibility for the promulgation of personnel rules.

3. **Municipal Corporations § 9.1— police officer—nonpromotion based upon merit**

Findings of fact made by the Raleigh Civil Service Commission would support only the conclusion that the chief of police relied on merit and fitness in promoting two officers other than respondent to the rank of captain where the findings showed that one promoted officer had been ranked first by a promotion review board, that the second officer's promotion was based on his qualifications for a specific job in the sensitive area of personnel, and that the nonpromotion of respondent was based on oral criticism of his qualifications by two ranking officers, including his immediate commanding officer, and where there was no finding that respondent's overall qualifications for promotion were superior to those of either of the promoted officers and that the chief of police failed to promote him in the face of those superior qualifications.

Judge WELLS concurs in the result.

APPEAL by respondent from *Godwin, Judge.* Order entered 20 May 1981 in Superior Court, WAKE County. Heard in the Court of Appeals on 8 June 1982.

The origin of this case may be traced to a letter sent by respondent, a lieutenant with the Raleigh Police Department, seeking an appeal to the Raleigh Civil Service Commission of "the apparent decision of the Chief of Police not to promote . . . [respondent] to the rank of Captain;" essentially, the alleged ground for respondent's appeal was that he was "better qualified for such promotion than the officers who have apparently received it." The petitioner City of Raleigh, and respondent

stipulated that the Raleigh Civil Service Commission had jurisdiction of respondent's appeal, and the Commission conducted an evidentiary hearing thereon.

The Commission made the following findings of fact with respect to the circumstances surrounding the filling of two vacancies for captain in the Raleigh Police Department:

Initially, only respondent's and two other lieutenants' resumes were requested for consideration for the vacancies. Upon the complaints of other lieutenants and their captains, the Chief of Police requested submission of the resumes of all Raleigh police lieutenants. The Chief also asked each captain and major to recommend those lieutenants whom the captains and majors believed to be qualified for promotion to the rank of captain; this request by the Chief was vague and set forth no criteria upon which to base the recommendations, and the Chief's request established no maximum or minimum number of persons to be recommended by each captain or major. Such vagueness resulted in some ranking officers recommending many persons for captain, and others recommending only a few. The recommendation process resulted in the Police Chief narrowing down the number of eligible lieutenants, based on the number of recommendations each received, to six. Respondent was among those six. The Chief of police then submitted this eligibility list of six candidates to a Promotion Review Board consisting of two majors and three captains. In setting up the Board, the Chief established no criteria for membership thereon, and provided its members with no criteria to apply in their evaluation of the six eligible lieutenants. Further, "[t]he Chief neither decided nor announced in advance what, if any, weight would be given to the result of the Board's review." The Review Board adopted the following categories as its own criteria: judgment, attitude, communication skills, leadership qualities, and overall opinion of candidates. Thereupon, the Review Board issued to the Chief a ranking of the six candidates according to their relative qualifications for promotion as follows: (1) Lieutenant Ellis Meekins—First; (2) Lieutenant Charles J. Williams—Close Second; (3) Lieutenant Ernest Lassiter—Third; (4) Lieutenant Curtis Winston—Fourth; (5) Unknown; (6) Unknown.

The remaining pertinent findings of fact are as follows:

17. On April 26, 1979, the Chief then selected for promotion to the grade of Captain, Lieutenant Meekins.

18. On April 26, 1979, Lieutenant Winston was promoted to the rank of "Acting Captain" of grade for which there is no authority in the City Personnel Procedure.

19. Upon retirement in July, 1979, of then Major Bunn, Lieutenant Winston was appointed to the permanent grade of Captain, without any further competition, selection or formal acknowledgment of the latter Personnel action.

20. In selecting Lieutenant . . . [Winston] for promotion, Chief Heineman considered principally his qualifications for a specific job at the Police Academy in the area of personnel.

.　　.　　.

22. The apparent preferential treatment extended to the Appellant, Williams, by orally requesting his resume before or without requesting the resumes of other Lieutenants except Lassiter and Diedrich, prejudiced certain ranking officers against him, including his then immediate commanding officer, Captain James Stell. Captain Stell, who, then and now, considers Williams qualified for promotion, failed to recommend him because of his dissatisfaction with the promotion procedure and because of his understanding that he was only requested to recommend two candidates for promotion.

23. In deciding not to promote the appellant, Williams, the Chief relied heavily upon oral criticism of his qualifications by Captains James Stell and Larry Smith, which are contradicted by written Officer Evaluation Reports on Lieutenant Williams which were available at the time of that decision, including the one prepared by Williams' most recent previous commanding officer and which are contradicted by a written Evaluation Report prepared later by Williams' then commanding officer, Captain Stell, but covering the same period in which Stell's oral criticism was allegedly said to have been made.

24. Chief Heineman did not consider the seniority, education, or variety of experience of any candidate in the promotional process.

25. Chief Heineman has no specific recollection of the exact sequence of the events surrounding and included in the promotional procedure and no written record of the sequence of those events.

26. The Chief of Police is the only rank within the Police Department charged with the responsibility of making promotions. Neither Majors nor Captains have the right or responsibility to make promotions.

. . .

28. Lieutenant Charles J. Williams testified that of three Lieutenants who were considered for promotion, the Appellant, Williams, has greater educational qualifications than Meekins and greater tenure than Winston. At the time the promotions were announced, Williams' experience in the Raleigh Police Department had been more varied than that of either of the other two. His testimony was unrebutted.

Upon such findings of fact, the Commission entered the following pertinent conclusions of law:

2. The Raleigh Civil Service Act (Chapter 1154 of the Session Laws of North Carolina, 1971) requires that personnel actions including promotions to the grade of Captain in the Raleigh Police Department be based on the merit principle.

. . .

4. Essential to the concept of the merit principle are that:

(a) Decisions for promotion coincide with the existence of vacancies.

(b) Promotions not be made prior to the existence of a vacancy.

(c) Preferential consideration for future promotion not occur prior to the existence of a vacancy.

(d) Promotions be based upon objective criteria, established and published in advance of the promotional process.

(e) Promotions be the result of a procedure, established and published in advance and said procedure be followed, consistently.

(f) Promotional criteria be based upon reason, that is, that they have a rational basis.

(g) The promotional process be designed to minimize prejudice to all candidates and potential candidates for promotion.

(h) The results of the promotion consideration be announced along with the reason that the successful candidate(s) was/were selected.

5. The process by which Raleigh Police Chief Frederick Heineman selected Lieutenants Meekins and Winston for promotion lacked, in a substantial way, the above essential elements as shown by conclusion of law Number 4.

6. Lieutenant Charles J. Williams was prejudiced and otherwise adversely affected by the failure of such process to include said essential elements in a substantial way.

.  .  .

9. Lieutenant Charles J. Williams was and is qualified for promotion to Captain.

10. The City of Raleigh has refused to provide the Civil Service Commission competent evidence that either of the Lieutenants—Meekins or Winston—would indeed possess qualifications to be promoted to Captain.

Thereupon, the Commission ordered the City of Raleigh to promote respondent "to Captain at the occurrence of the next vacancy," and to pay him "at the scale of Captain's pay from April 26, 1979, until such date as his status may be changed," and that interest be paid on such back pay.

The petitioner, City of Raleigh, thereupon petitioned "the Wake County Superior Court for a writ of certiorari to review the . . . order" of the Commission. The petition was allowed.

Upon the court's review of the record of proceedings before the Commission, the court concluded that the

Commission was without authority to promulgate, publish and consider rules which it deemed to be essential elements of the "Merit principle"; . . . that the sole issue presented to the . . . Commission by respondent's appeal to it was whether [the] Chief of Police . . . wrongfully discriminated against respondent when he passed over respondent and promoted Lieutenants Meekins and Winston; . . . that there was no evidence presented to the . . . Commission which would support a finding or conclusion that respondent was wrongfully discriminated against as he was passed over, . . . and that the Commission made no such finding or conclusion.

From the superior court's order reversing the order of the Commission, respondent appealed.

*Dawn Stroud Bryant, for petitioner appellee.*

*William E. Brewer, Jr., for respondent appellant.*

HEDRICK, Judge.

[1]   The first assignment of error to be treated is respondent's contention that "[t]he Court erred in concluding that the sole issue presented to the Raleigh Civil Service Commission by respondent's appeal to it was whether [the] Chief of Police . . . wrongfully discriminated against respondent when he passed over respondent and promoted Lieutenants Meekins and Winston." The gravamen of respondent's argument under this assignment of error is that the court's ruling limited respondent's appeal to the sole issue of whether he had been a victim of racial discrimination, and that such ruling therefore improperly avoided the question raised by respondent of whether the "merit principle" was violated when other lieutenants were promoted over him.

The "merit principle" to which respondent refers appears in section (b) of the then-controlling Raleigh Civil Service Act, found in 1971 N.C. Sess. Laws Ch. 1154, § 1, which reads as follows:

*Merit Principle.* All appointments and promotions of the City officers and employees shall be made solely on the basis of merit and fitness demonstrated by examination or other evidence of competence. However, any employee who contends that he was not promoted because of bias or because of reasons not related to merit, fitness or availability of posi-

In re Williams

tions, shall have the right, after exhausting all administrative remedies, to appeal his cause to the Civil Service Commission.

Respondent is correct insofar as he suggests that his appeal presented a question of whether his nonpromotion was a violation of the merit principle even if it was not attributable to racial discrimination. He is wrong, however, in contending that the court's limiting the appeal to the issue of "wrongful discrimination" avoided the "merit principle" question. "Discrimination" is defined as follows: "the act or an instance of discriminating: as (1) the making or perceiving of a distinction or difference . . . (2) recognition, perception, or identification esp. of differences: critical evaluation or judgment." Webster's Third New International Dictionary 648 (1968). Hence, an issue of "wrongful discrimination" would encompass the question of whether wrongful differentiations were made by the Chief of Police in his assessments of candidates for promotion; such a wrongful differentiation would be one based on grounds unrelated to merit. The court, in considering the sole issue of wrongful discrimination, therefore did not fail to pass on the "merit principle" issue. This assignment of error has no merit.

[2] The next assignment of error to be considered is respondent's contention that the court's reversal of the Commission's order was predicated on a ground which was erroneous or, if not erroneous, insufficient for reversal. The alleged improper ground for reversal was the court's conclusion that the "Commission was without authority to promulgate, publish and consider rules which it deemed to be essential elements of the 'Merit Principle.'"

The essential elements of the "Merit principle" referred to in the court's order were delineated by the Commission in Conclusion of Law number 4 of the Commission's order, set out *supra.* Respondent argues that the Commission did have the power and authority to delineate these essential elements.

An administrative "agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislative grant of authority." *In re Broad & Gales Creek Community Association,* 300 N.C. 267, 280, 266 S.E. 2d 645, 654 (1980).

Although "[t]he authority to make rules and regulations to carry out an express legislative purpose or to effect the operation and enforcement of a law . . . may be delegated," *Motsinger v. Perryman*, 218 N.C. 15, 20, 9 S.E. 2d 511, 514 (1940), there is nothing in the Raleigh Civil Service Act to indicate that the Commission was conferred the power to delineate the essential elements of the "Merit principle." Rather, the Act vests in the City Council the ultimate responsibility for the promulgation of personnel rules as follows:

> (e) *Personnel Rules.* The officer administering the personnel system shall prepare personnel rules. The City Manager shall refer such proposed rules to the Civil Service Commission which shall report to the Manager its recommendations thereon. The rules including the recommendations of the Civil Service Commission and the recommendations of the City Manager shall be presented to the City Council. The Council upon consideration of the recommendations shall then adopt the official personnel rules.

1971 N.C. Sess. Laws Ch. 1154, § 1. Furthermore, the Commission's "essential elements" require more of a promoting official than is required by the "Merit principle," in that the "essential elements" include procedural requirements as well as considerations of substantive qualifications; *e.g.*, the Commission required that promotional criteria and procedure be established and published in advance of the promotional process. Noncompliance with such procedural details does not necessarily constitute a violation of the "Merit principle," and the promoting official was free to make its promotional decisions as it chose, except for the specific statutory constraints imposed by the Act's "Merit principle" and prohibition of wrongful discrimination. *See* 3 McQuillin, The Law of Municipal Corporations § 12.131 (3d ed. 1982).

The Commission's "essential elements" were therefore unauthorized and not binding on the Chief of Police, and his failure to comply therewith was not *ipso facto* a violation of the "Merit principle" requiring relief from the Commission. Under this assignment of error, however, respondent also contends that even if the Commission's "essential elements" were improper, the court should not have reversed the Commission since the Commission did make findings of fact to support a conclusion that the

true "Merit principle" had been violated. This argument coincides with respondent's final assignments of error and will be discussed thereunder.

[3] The last assignment of error brought forward in respondent's brief is in pertinent part as follows: "[t]he Court erred in reversing and setting aside the Order of the . . . Commission because . . . the conclusions of law are supported by the findings of fact." Notwithstanding his assertions to the contrary, respondent appellant does have the burden of prevailing on this issue, since otherwise the court's order reversing the Commission would have to stand on the basis of its conclusion "that the Commission made no such finding" "that respondent was wrongfully discriminated against."

In resolving this issue, there is a two-fold inquiry. First, there must be a determination of what the statutory "Merit principle" requires in promotions; secondly, there must be a determination of whether the Commission's findings of fact are sufficient to support a conclusion that the "Merit principle" was violated.

The "Merit principle" requires that promotions be made "solely on the basis of merit and fitness." Hence, the condition precedent to any Commission-ordered relief from a City promotion decision is a showing that such decision was based on some consideration other than the candidates' merit and fitness.

The Commission's findings of fact relevant to the Chief of Police's decision to promote Lieutenants Meekins and Winston over respondent are as follows:

Some of the procedures undertaken by the Chief in the promotional process appeared to be favoritism towards respondent, and prejudiced certain ranking officers against respondent; nevertheless, respondent's name was one of six submitted to the Promotion Review Board, and such Board ranked him a close second behind Meekins, and two places in front of Winston. The Chief gave the promotions to Meekins and Winston, notwithstanding respondent's testimony that he had greater educational qualifications and more varied experience than Meekins, and greater tenure and more varied experience than Winston. The Chief "did not consider the seniority, education, or variety of experience of

any candidate in the promotional process." In deciding not to pro-
mote respondent, the Chief relied heavily upon oral criticism of
his qualifications by his immediate commanding officer, Captain
James Stell, and by Captain Larry Smith; these oral criticisms
conflicted with contemporaneous written Officer Evaluation
Reports, one of which had been prepared by Captain Stell. In
selecting Winston for promotion, the Chief considered principally
his qualifications for a specific job at the Police Academy in the
area of personnel.

These findings of fact are insufficient to support a conclusion
that the Chief relied on anything other than merit or fitness in
not promoting respondent. There is no finding that the Chief's
decision was based on an unwarranted bias against respondent or
on an illegitimate favoritism towards Meekins or Winston.
Rather, the findings show that Meekins had been ranked first by
the Promotion Review Board, and that Winston's promotion was
based on his qualifications for a specific job in the sensitive area
of personnel. Further, the findings show that the nonpromotion of
respondent was based on oral criticism of his qualifications by
two ranking officers, including his immediate commanding officer.
Finally, the fact that a person of less experience and education
than another is promoted over that other does not necessarily im-
ply that the promotional decision was based on considerations
other than merit and fitness. In determining which candidate has
the most merit and fitness for a job, criteria other than educa-
tional degrees, examination scores, and years of tenure are rele-
vant; for instance, the Chief of Police in the present case testified
to the importance of considering a candidate's attitude in ascer-
taining his merit and fitness for a particular position. There is no
finding that respondent's overall qualifications for promotion
were superior to those of either Meekins or Winston, and that the
Chief of police failed to promote him in the face of those superior
qualifications. The Commission committed an error of law when it
concluded that the facts found by it amounted to a violation by
petitioner of the "Merit principle." "Ordinarily, a municipal body,
when sitting for the purpose of review, is vested with quasi-
judicial powers, and a decision of the board, while subject to
review by the courts upon certiorari, will not be disturbed *in the
absence* of arbitrary, oppressive, or manifest abuse of authority,
or *disregard of the law." Springdale Estates Association v. Wake*

McCollum v. Grove Mfg. Co.

*County,* 47 N.C. App. 462, 467, 267 S.E. 2d 415, 418 (1980). [Emphasis in original.] In the present case, the Commission did misapprehend the law, and was properly reversed by the superior court on certiorari. This assignment of error is overruled.

The order of the trial court is

Affirmed.

Judge ARNOLD concurs.

Judge WELLS concurs in the result.