MILDRED R. TICE v. DEPARTMENT OF TRANSPORTATION, HAYWOOD WARD, OTIS EVANS, RICHARD EVANS AND TOMMY WILLIAMS

No. 831SC63

(Filed 6 March 1984)

Attorney General § 1— representation of State department—authority to enter consent judgment—necessity for consent of department
>       The Attorney General's office, when representing a State department pursuant to G.S. 114-2(2) and G.S. 147-17(b), has no authority to enter a consent judgment without the consent of the department.

APPEAL by plaintiff from *Allsbrook, Judge.* Order entered 9 November 1982 in Superior Court, CURRITUCK County. Heard in the Court of Appeals 7 December 1983.

Plaintiff appeals from an order vacating a consent judgment entered between plaintiff and an assistant Attorney General purporting to act on behalf of defendant Department of Transportation (DOT).

*Attorney General Edmisten, by Special Deputy Attorney General James B. Richmond, for the State.*

*Trimpi, Thompson & Nash, by John G. Trimpi and C. Everett Thompson, for plaintiff appellant.*

WHICHARD, Judge.

## I.

The appeal is from an interlocutory order. Because of the significance of the issue involved, however, we treat the appeal as a petition for a writ of certiorari and allow the writ in order to dispose of the issue on its merits. *See Stone v. Martin,* 53 N.C. App. 600, 602, 281 S.E. 2d 402, 403 (1981), *rehearing,* 56 N.C. App. 473, 289 S.E. 2d 898, *disc. rev. denied,* 306 N.C. 392, 294 S.E. 2d 220 (1982); *Plumbing Co. v. Associates,* 37 N.C. App. 149, 152, 245 S.E. 2d 555, 557, *disc. rev. denied,* 295 N.C. 648, 248 S.E. 2d 250 (1978).

## II.

The issue is whether the Attorney General's office, when representing a State department pursuant to G.S. 114-2(2), has authority to enter a consent judgment without the consent of the department. We hold that it does not, and we thus affirm the order vacating a consent judgment entered without the consent of defendant DOT.

## III.

Plaintiff brought this action against defendant DOT and four individual defendants to establish title to a strip of land adjacent to other land which she owned. The strip is approximately one hundred feet long and fifty feet wide. It is located at the end of a State maintained road and connects the road to the waters of Tulls Creek Bay. Plaintiff also sought injunctive relief to prohibit defendant DOT from trespassing on her property. In its answer, defendant DOT admitted that it had operated a roadway adjacent to plaintiff's property, but claimed an interest in the land which plaintiff claimed as hers.

After almost two years of negotiations, the assistant Attorney General representing defendant DOT entered a consent

judgment with plaintiff. The consent judgment established the boundaries of the State road and enjoined plaintiff from interfering with the maintenance and public use of the road. There is neither allegation nor evidence that the assistant Attorney General acted in bad faith in signing the consent judgment on behalf of defendant DOT.

Subsequently defendant DOT filed a motion to set aside the stipulations upon which the consent judgment was based and the consent judgment itself. The grounds alleged as the basis for the motion were that the stipulations were untrue; that they were executed by the assistant Attorney General representing defendant DOT "by mistake and inadvertence under a misapprehension of the true facts"; and that the assistant Attorney General "was without authority from the [DOT], or any of its authorized officials, to execute the consent judgment on its behalf."

The trial court made findings of fact that the assistant Attorney General did not have defendant DOT's consent and was not authorized to consent to the judgment. The findings are supported by evidence in the record and are therefore conclusive. *Harrelson v. Insurance Co.*, 272 N.C. 603, 609, 158 S.E. 2d 812, 817 (1968).

The court concluded that the consent to the judgment conceded a substantial right of defendant DOT without its consent and was void. It therefore vacated the order, ordered that the case file be reopened, and further ordered that the case be added to the regular calendar for trial. The court's conclusion, and its action pursuant thereto, are subject to review. *Id.*

IV.

G.S. 114-2(2) provides that one of the duties of the Attorney General is to "represent all State departments, agencies, institutions, commissions, bureaus or other organized activities of the State which receive support in whole or in part from the State." *See also* G.S. 147-17(b). The departments may not hire other counsel unless so authorized by the Governor. G.S. 147-17(a). Defendant DOT contends that while the statute prescribes that the Attorney General represent it, he cannot enter a consent judgment on its behalf without its consent.

Generally, an attorney cannot enter a consent judgment without the consent of his client. *Howard v. Boyce*, 254 N.C. 255, 264-66, 118 S.E. 2d 897, 903-04 (1961). "[A]bsence of authority to consent . . . deprive[s] the judgment of any sort of validity." *Bath v. Norman*, 226 N.C. 502, 504, 39 S.E. 2d 363, 364 (1946).

In *Bath* a town brought an action in which it sought to be declared the owner of certain land. The town attorney, without the town's consent or knowledge, entered a consent judgment. The Court held that even though the attorney acted in good faith, the consent judgment was void because he did not in fact have the town's consent. It stated that

> [i]n this State, as generally throughout the Union, the client, municipal or otherwise, is bound by many acts of his attorney incidental to the ordinary conduct of the case, often of great importance. But that power does not extend to an act of the sort under review, or to any other substantial compromise of the client's right . . . .

*Bath, supra*, 226 N.C. at 506, 39 S.E. 2d at 365.

## V.

The question here is whether the legislature, in enacting G.S. 114-2(2), intended to deviate from the above general rule by allowing the Attorney General, when representing a State department, to enter a consent judgment without the department's consent. This situation must be distinguished from situations in which the Attorney General is prosecuting an appeal or in which he brings an action on behalf of the State. The general rule in those situations is that the Attorney General has control of the action and may settle it when he determines it is in the best interest of the State to do so. *See generally State v. Thompson*, 10 N.C. (3 Hawks) 613 (1825); *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P. 2d 813 (Okla. 1973); 7 Am. Jur. 2d *Attorney General* § 18 (1980); Annot., 81 A.L.R. 124 (1932).

## VI.

Brief examination of the development of the office of Attorney General, which originated at common law, is appropriate to decision of the issue. Originally, "the Crown did not act through a single attorney at all. Instead, the King appointed

numerous legal representatives and granted each the authority to appear only in particular courts, on particular matters, or in the courts of particular geographical areas." Edmisten, The Common Law Powers of the Attorney General of North Carolina, 9 N.C. Cent. L.J. 1, 4 (1977). As the office evolved in England, the Attorney General became the "Chief Legal Advisor for the Crown and had charge of the management of all legal affairs and the prosecution of all suits in which the Crown was interested." Morgan, The Office of the Attorney General, 2 N.C. Cent. L.J. 165, 166 (1970); see 6 W. Holdsworth, A History of English Law 467-68 (1924); National Association of Attorneys General Committee on the Office of Attorney General, Report on the Office of Attorney General §§ 1.1 to .13, at 11-19 (1971) (hereinafter National Association); Cooley, Predecessors of the Federal Attorney General: The Attorney General in England and the American Colonies, 2 Am. J. of Legal History 304 (1958).

The duties of the Attorney General in England included the following:

(1) To prosecute all actions necessary for the protection and defense of the property and revenue of the Crown.

(2) By information, to bring certain classes of persons accused of crimes and misdemeanors to trial.

(3) By *"scire facias,"* to revoke and annul grants made by the Crown improperly, or when forfeited by the grantee.

(4) By information, to recover money and other chattels, or damages for wrongs committed on the land, or other possessions of the Crown.

(5) By writ of mandamus, to compel the admission of an officer duly chosen to his office, and to compel his restoration when illegally ousted.

(6) By information to chancery, to enforce trusts, and to prevent public nuisances, and the abuse of trust powers.

Morgan, *supra,* at 165.

During the colonial period the office of Attorney General developed in the American colonies. "Not surprisingly, these colonial Attorneys General were viewed as possessing the common law powers or then-current powers of the Attorney General in England." Edmisten, *supra*, at 5. The accepted view was that "the Attorney General had the duty and the exclusive right to represent these governments and their agencies and officers." Morgan, *supra*, at 167.

The period after the American revolution, however, "was characterized by a distrust of centralized government. The Attorney General was made an independently elected official in most states, but he was deprived of much of his power over legal matters at both the state and the local level. Legal services, like state government organization, were fragmented." National Association, *supra*, § 5.12, at 272. A trend began to develop in which states passed legislation allowing state agencies to hire their own attorneys or allowing the Governor to appoint them. Morgan, *supra*, at 167; National Association, *supra*, § 1.34, at 49-51. Among the reasons given for the trend were "the distrust of centralization and the recognition of certain weaknesses in some of the Attorneys General." Morgan, *supra*, at 167.

## VII.

Our legislature has acted counter to this trend. It has provided that "[t]he Attorney General shall be counsel for all departments, agencies, institutions, commissions, bureaus or other organized activities of the State which receive support in whole or in part from the State." G.S. 147-17(b). It has further provided that "[n]o department, agency, institution, commission, bureau or other organized activity of the State which receives support in whole or in part from the State shall employ any counsel, except with the approval of the Governor." G.S. 147-17(a).

Our legislature also has created numerous state agencies and departments, each with its own specific responsibilities and areas of expertise. *See* G.S. 143A-1 to -245; G.S. 143B-1 to -492. The general purpose of the department in question here, defendant DOT,

> is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transporta-

tion system for the economical and safe transportation of people and goods as provided for by law. The Department shall also provide and maintain an accurate register of transportation vehicles as provided by statutes, and the Department shall enforce the laws of this State relating to transportation safety assigned to the Department. The Department of Transportation shall be responsible for all of the transportation functions of the executive branch of the State as provided by law except those functions delegated to the Utilities Commission, the State Ports Authority, and the Commissioners of Navigation and Pilotage as provided for by Chapter 76.

G.S. 143B-346. Defendant DOT has been given the power

to locate and acquire rights-of-way for any new roads that may be necessary for a State highway system, with full power to widen, relocate, change or alter the grade or location thereof and to change or relocate any existing roads that the Department of Transportation may now own or may acquire; to acquire by gift, purchase, or otherwise, any road or highway, or tract of land or other property whatsoever that may be necessary for a State highway system.

G.S. 136-18(2).

It is thus clear that the legislature has provided a comprehensive scheme in which all decisions relating to the State highway system have been delegated to defendant DOT. This form of departmentalized government, with delineated responsibilities and areas of expertise, was unknown at common law. We do not believe the legislature, by providing that the Attorney General would serve as counsel for State departments, intended to authorize him to make decisions in areas which have been specifically delegated to a designated department. That would be the effect of allowing the Attorney General to enter, without the consent of defendant DOT, a consent judgment which establishes the boundaries of a road and gives defendant DOT a right-of-way. We believe, instead, that the legislature intended that when the Attorney General represents a State department pursuant to G.S. 114-2(2), the traditional attorney-client relationship should exist. The Attorney General thus would not have authority to enter a

consent judgment on behalf of a State department without the consent of a duly authorized department official.

## VIII.

We believe considerations of sound public policy also suggest this conclusion. The Governor is a constitutional officer elected by the qualified voters of the State. N.C. Const. art. III, § 2. The executive power of the State is vested in him, N.C. Const. art. III, § 1; and he has the duty to supervise the official conduct of all executive officers, G.S. 147-12(1). The Attorney General is a constitutional officer elected independently of the Governor, N.C. Const. art. III, § 7; is the head of the Department of Justice, G.S. 143A-49; and has the duty to supervise that Department's activities, G.S. 114-1. The constitutional independence of these offices, and their differing functions and duties, create clear potential for conflict between their respective holders. In the event of such conflict, power in the Attorney General to resolve, without their consent, controversies involving agencies or departments under the supervision of the Governor, could be abused by exercise in a manner effectively derogative of the Governor's constitutional duties to exercise executive power and to supervise the official conduct of all executive officers. We do not believe the General Assembly, in the enactment of G.S. 114-2(2), intended to create such potential.

Such potential also could cause State agencies and departments, with the approval of the Governor as required by G.S. 147-17(a), to engage in more extensive employment of their own counsel. The traditional attorney-client relationship would exist between such counsel and the agencies or departments they would represent, and such counsel thus could not enter consent judgments without the consent of the agency or department. *Bath v. Norman, supra.*

This practice would, however, cause additional expense to the State. It would also undermine, and perhaps ultimately destroy, the customary role of the Attorney General's office in representing the agencies and departments of the State, a role which historically has served the State well.

Thus, to avoid additional expense to the State, and to preserve for the Attorney General's office a well-established role

of proven utility, we believe the better rule to be that an agency or department of the State should have the right possessed by other litigants to determine whether its counsel, whether the Attorney General or otherwise, can enter a consent judgment on its behalf. Such a right is also consonant with fulfillment by the respective agencies and departments of the State of their statutorily assigned duties.

## IX.

We note that two state supreme courts, in analogous situations, have held as we do. In so doing, the Georgia Supreme Court stated that the Georgia Code "does not even permit any attorney to bind his client by settlement for less than the full sum claimed, unless express authority be given by the client. . . . It would seem strange, therefore, that the state should be bound by her attorneys without her express authority, when none of her people would be by theirs." *State v. Southwestern Railroad,* 66 Ga. 403, 407 (1880). The North Dakota Supreme Court stated that

> although it is perfectly obvious under the statute that the attorney general is the general and the legal adviser of the various departments and officers of the state government, . . . this does not mean that the attorney general, standing in the position of an attorney to a client, who happens to be an officer of the government, steps into the shoes of such client in wholly directing the defense and the legal steps to be taken in opposition or contrary to the wishes and demands of his client or the officer or department concerned.

*State ex rel. Amerland v. Hagan,* 44 N.D. 306, 311, 175 N.W. 372, 374 (1919), *overruled on other grounds, Benson v. North Dakota Workmen's Compensation Bureau,* 283 N.W. 2d 96 (N.D. 1979).

## X.

In summary, we find nothing in the common law powers of the Attorney General which grants him authority to enter consent judgments binding the agencies and departments of the State without their consent. Our statutes do not expressly grant such power. The assignment of specific responsibilities and duties to the various agencies and departments would appear to indicate legislative intent to the contrary. Given the constitutional and

statutory structure of state government, and the assignment of duties and responsibilities between and among its officers, agencies, and departments, considerations of sound public policy also suggest the contrary rule.

We thus hold that the Attorney General, when representing the "departments, agencies, institutions, commissions, bureaus or other organized activities of the State" pursuant to G.S. 147-17(b), is bound by the traditional rule governing the attorney-client relationship, and cannot enter a consent judgment without the consent of the entity represented. *Howard v. Boyce, supra; Bath v. Norman, supra.* The trial court found, on the basis of competent evidence in the record, that the judgment in question was entered without the consent of defendant DOT. It thus properly concluded that the judgment was void and should be vacated. Its order so doing is

Affirmed.

Judges WEBB and WELLS concur.