CARILLON ASSISTED LIVING, LLC, PETITIONER v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, ADULT CARE LICENSURE SECTION; AND THE STATE OF NORTH CAROLINA, RESPONDENTS

No. COA05-135

(Filed 3 January 2006)

**Administrative Law— assisted living facilities—settlement projects—2001 Session Law**

The trial court erred by failing to uphold the decision of the ALJ granting summary judgment for petitioner on the ground that a 2001 Session Law did not apply to settlement projects regarding the development of assisted living facilities, and the case is remanded for entry of judgment in favor of petitioner as provided in the settlement agreement, because: (1) the language of the settlement agreement is unambiguous and provides that in exchange for the right to develop the settlement projects without obtaining an exemption, petitioner forfeited its right to litigate its remaining claims and constitutional challenges; (2) respondents properly exercised their statutory authorities to settle the case under N.C.G.S. § 150B-22 and determined that the moratorium did not operate to limit DHHS and the State's authority with regard to certain of the projects at issue; (3) appellate courts must avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds; (4) the 2001 Session Law is inapplicable to the settlement or gap projects, and the statutory exemptions apply only to the moratorium; and (5) the settlement agreement does not provide petitioner solely a statutory exemption to develop the projects, but instead, the agreement expressly

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

provides that petitioner shall be entitled to develop the settlement projects.

Judge JACKSON dissenting.

Appeal by petitioner from order entered 16 November 2004 by Judge Orlando F. Hudson, Jr., in Wake County Superior Court. Heard in the Court of Appeals 12 October 2005.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr., Forrest W. Campbell, Jr., and Charles F. Marshall III, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Thomas M. Woodward and Assistant Attorney General Susan K. Hackney, for respondents-appellees.*

TYSON, Judge.

Carillon Assisted Living, LLC ("petitioner") appeals from order entered granting the North Carolina Department of Health and Human Services, Adult Care Licensure Section's ("DHHS") motion to dismiss petitioner's constitutional, breach of contract, and damages claims and its claims against DHHS and the State for lack of jurisdiction and summary judgment for respondents on all remaining claims. We reverse and remand.

## I. Background

Karen Moriarty Penry founded Carillon Assisted Living, LLC in 1996. Petitioner established an office in Raleigh to develop assisted living facilities in North Carolina. As of 29 January 2004, petitioner operated six licensed assisted living facilities in six different North Carolina counties.

In June 1997, petitioner filed plans with DHHS for development of twenty-one assisted living facilities.

On 28 August 1997, the North Carolina General Assembly imposed a moratorium on the development of additional assisted living facilities. The moratorium was retroactive to 1 July 1997 and expired on 30 June 1998. The law provided:

From the effective date of this Act until 12 months after the effective date of this Act, the Department of Health and Human

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

Services shall not approve the addition of any adult care home beds for any type home or facility in the State, except as follows:

(1) Plans submitted for approval prior to May 18, 1997;

(2) Plans submitted for approval prior to May 18, 1997, may be processed for approval if the individual or organization submitting the plan demonstrates to the Department that on or before August 25, 1997, the individual or organization purchased real property, entered into a contract to purchase or obtain an option to purchase real property entered into a binding real property lease arrangement, or has otherwise made a binding financial commitment for the purpose of establishing or expanding an adult care home facility,

1997 N.C. Sess. Laws 443.

On 30 October 1998, the legislature reinstated the moratorium retroactive to 1 July 1998 through 26 August 1999. The legislature again extended the moratorium in 1999 and 2000. It remained in force through 31 December 2001.

In January 1999, DHHS declined to issue a declaratory ruling that eight of petitioner's new projects and six of its expansion projects were to be exempt from the moratorium. Petitioner petitioned for review in Wake County Superior Court alleging: (1) its proposed projects were exempt from the moratorium; (2) the moratorium was unconstitutional; and (3) application of the moratorium to petitioner's projects was unconstitutional. The court ruled in petitioner's favor on 15 October 1999 and held that the projects were exempt from the moratorium and petitioner was entitled to develop all twenty-seven projects. DHHS appealed.

On 20 June 2000, petitioner, DHHS, and the State of North Carolina through its Attorney General, entered into a settlement agreement that resolved and settled the litigation. In the agreement, petitioner agreed to forego its constitutional challenges to the moratorium in exchange for the unconditional right to develop nineteen projects ("settlement projects") instead of the twenty-seven petitioner applied for. In accordance with the agreement, the trial court's order was vacated and the pending appeals were withdrawn.

The General Assembly enacted the 2001 Session Law, which provided the moratorium would expire on 31 December 2001. After 31 December 2001, all assisted living facilities were to be subject to a

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

Certificate of Need ("CON") law. N.C. Gen. Stat. § 131E-175 (2003). The 2001 Session Law provides, "any person who obtained an exemption" under the moratorium must meet financing and construction deadlines on its exempt projects to save the exemption. 2001 N.C. Sess. Laws 234. The exemption holder must provide DHHS with evidence of: (a) the funding to cover the project's capital costs by 1 June 2004; (b) the completion of building foundation and footings by 1 December 2004; and (c) the issuance of a certificate of occupancy by 1 December 2005. *Id.* If the holder of the exemption fails to meet these deadlines, the exemption is terminated. *Id.*

Petitioner maintained the deadlines did not apply to its development plans and did not comply with the statutory deadlines for many of its projects. DHHS advised petitioner that it could not develop forty-three projects ("gap projects") for which petitioner filed plans during the four-month period between the date the moratorium expired, 30 June 1998, and the date it was reinstated, 30 October 1998. DHHS asserted that if the moratorium precluded petitioner from developing the gap projects until 31 December 2001, the moratorium's expiration date precluded petitioner from developing the gap projects absent a CON.

On 24 July 2003, petitioner filed a contested case in the Office of Administrative Hearings. Petitioner asserted: (1) the 2001 Session Law is inapplicable to the settlement projects; (2) DHHS breached the settlement agreement; and (3) the application of the 2001 Session Law and moratorium to the settlement projects and the gap projects violated petitioner's rights under the United States and North Carolina Constitutions.

Administrative Law Judge Beecher R. Gray ("ALJ") ruled in petitioner's favor on 13 May 2004. The ALJ found the parties had agreed and settled for petitioner to possess an unconditional right to develop the settlement projects, had not agreed solely to an exemption from the moratorium, and the deadlines contained in the 2001 Session Law did not apply to the settlement projects.

On further review, DHHS reversed the ALJ. DHHS dismissed petitioner's constitutional, breach of contract, and damages claims, and its claims against the State for lack of jurisdiction. DHHS granted summary judgment for itself and the State and rejected petitioner's claim that the 2001 Session Law is inapplicable to the settlement projects and on its claim relating to the gap projects.

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

On 11 August 2004, petitioner filed a petition for judicial review in Wake County Superior Court. The trial court granted respondents' motion to dismiss petitioner's constitutional, breach of contract, and damages claims, and its claims against the State for lack of jurisdiction. The trial court granted summary judgment for respondents on all remaining claims. Petitioner appeals.

## II. Issues

Petitioner argues the trial court erred by: (1) failing to uphold the decision of the ALJ granting summary judgment for petitioner on the ground that the 2001 Session Law did not apply to the Settlement Projects; (2) dismissing petitioner's constitutional, breach of contract, and damages claims, and its claims against the State for lack of jurisdiction; and (3) failing to grant summary judgment for petitioner on its constitutional claims. Petitioner argues it is entitled to develop the gap projects for which plans were filed with DHHS when there was no moratorium or other development conditions were in effect.

## III. Standard of Review on Administrative Claims

The appropriate standard of review in this case depends upon the issue being reviewed. This Court has stated:

> The proper standard of review by the trial court depends upon the particular issues presented by the appeal. *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997); *Brooks v. McWhirter Grading Co., Inc.*, 303 N.C. 573, 580, 281 S.E.2d 24, 28 (1981). If appellant argues the agency's decision was based on an error of law, then de novo review is required. *In re McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) (citations omitted). If appellant questions whether the agency's decision was supported by the evidence or whether it was arbitrary or capricious, then the reviewing court must apply the whole record test.

*Deep River Citizens' Coalition v. NC Dep't of Env't and Natural Resources*, 149 N.C. App. 211, 213-14, 560 S.E.2d 814, 816 (2002).

The reviewing court must determine whether the evidence is substantial to justify the agency's decision. *Gordon v. North Carolina Department of Correction*, 173 N.C. App. 22, 34, 618 S.E.2d 280, 289 (2005). "A reviewing court may not substitute its judgment for the agency's, even if a different conclusion may result under a whole record review." *Id.*

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

As to appellate review of a superior court order regarding an agency decision, the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly. As distinguished from the any competent evidence test and a de novo review, the whole record test gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence.

*ACT-UP Triangle*, 345 N.C. at 706-07, 483 S.E.2d at 392 (internal quotations omitted).

## IV.  Session Law

Petitioner argues the language of the settlement agreement provides petitioner with the unconditional right to develop the projects and the 2001 Session Law is inapplicable to their projects. Respondents argue that petitioner's settlement projects are subject to the 2001 Session Law requiring a CON.

Our Supreme Court has stated, "if the meaning of the [agreement] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written . . . ." *Woods v. Insurance Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978).

The settlement agreement provides:

Immediately upon entry of an order by the Superior Court of Wake County allowing the joint motion references in Paragraph 1 of this agreement, Carillon, and any of Carillon's wholly-owned subsidiaries, shall be entitled to develop the assisted living facilities identified in Exhibit A to this agreement. The parties hereby agree that the moratorium is not applicable to development of the facilities described in Exhibit A.

The language of the settlement agreement is unambiguous. In exchange for the right to develop the settlement projects without obtaining an exemption, petitioner forfeited its right to litigate its remaining claims and constitutional challenges. DHHS previously had been granted full legislative authority to approve projects prior to the moratorium, which set limitations on that authority. To resolve a constitutional challenge to the moratorium, the parties agreed the moratorium did not operate to limit DHHS and the State's authority with regards to certain of the projects at issue, thereby settling a question

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

which otherwise would have to have been resolved by the courts. This settlement authority is precisely the legislative purpose of N.C. Gen. Stat. § 150B-22. Respondents properly exercised their statutory authorities to settle the case. N.C. Gen. Stat. § 150B-22 (2003) ("It is the policy of this State that any dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty, should be settled through informal procedures.").

The dissenting opinion argues that while respondents had authority to enter into settlement agreements pursuant to this statute, that authority is not without constitutional limitation. However, "appellate courts must 'avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.' " *James v. Bartlett*, 359 N.C. 260, 266, 607 S.E.2d 638, 642 (2005) (quoting *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002)); *see also Union Carbide Corp. v. Davis*, 253 N.C. 324, 327, 116 S.E.2d 792, 794 (1960) ("Courts must pass on constitutional questions when, but only when, they are squarely presented and necessary to the disposition of a matter then pending and at issue."); *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957) ("[A] constitutional question will not be passed on even when properly presented if there is also present some other ground upon which the case may be decided."); *State v. Muse*, 219 N.C. 226, 227, 13 S.E.2d 229, 229 (1941) (an appellate court will not decide a constitutional question "unless it is properly presented, and will not decide such a question even then when the appeal may be properly determined on a question of less moment."). Applying this principle, the present case can be resolved on purely statutory grounds. N.C. Gen. Stat. § 150B-22.

Additionally, the settlement agreement was executed by DHHS's chief of the Adult Care Licensure Section and the State of North Carolina by the Special and Assistant Attorney Generals. The agreement specifically provides, "[t]he undersigned represent and warrant that they are authorized to enter into this agreement on behalf of the parties." Both DHHS and the State of North Carolina consented to the settlement agreement. The Superior Court's order in petitioner's favor was vacated and the parties' appeals were withdrawn. When "the Attorney General has control of the action [he] may settle it when he determines it is in the best interest of the State to do so." *Tice v. DOT*, 67 N.C. App. 48, 51, 312 S.E.2d 241, 243 (1984).

The 2001 Session Law requires the exemption holder to provide evidence of: (a) the funding to cover the project's capital costs by 1

272　　　　IN THE COURT OF APPEALS

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

June 2004; (b) the completion of building foundation and footings by 1 December 2004; and (c) the issuance of a certificate of occupancy by 1 December 2005. 2001 N.C. Sess. Laws 234.

The 2001 Session Law is inapplicable to the settlement or gap projects. The statutory exemptions apply only to the moratorium. The settlement agreement does not provide petitioner solely a statutory exemption to develop the settlement projects. Rather, the agreement expressly provides that petitioner "shall be entitled to develop" the settlement projects. The agreement also expressly provides, "[t]he parties hereby agree that the moratorium is not applicable to development of the facilities described in Exhibit A." Because the exemptions apply only to the moratorium and the moratorium is expressly inapplicable to petitioner by the settlement agreement, petitioner is not bound by the 2001 Session Law. N.C. Gen. Stat. § 150B-22.

In light of our decision, it is unnecessary to reach petitioner's constitutional claims.

## V. Conclusion

Petitioner's settlement projects are not subject to the 2001 Session Law. *Id.* The language of the settlement agreement expressly provides petitioner the right to develop the projects, not a right to an exemption, and was executed by parties with authority to bind DHHS and the State. The provisions of the moratorium and the 2001 Session Law are inapplicable to the gap projects. In light of our decision, it is unnecessary to reach petitioner's constitutional claims. The trial court's order is reversed and this cause is remanded for entry of judgment in favor of petitioner as provided in the settlement agreement.

Reversed and remanded.

Judge JOHN concurs.

Judge JACKSON dissents.

JACKSON, Judge dissenting.

For the following reasons, I must respectfully dissent from the majority opinion.

Petitioner argues that the settlement agreement grants an unconditional right to develop the settlement projects and makes the leg-

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

islatively enacted moratorium inapplicable to the settlement projects. Respondent argues that the settlement projects always were subject to legislative constraints and that the settlement agreement merely settled the parties' dispute regarding whether the projects in question could be approved under one of the enumerated exceptions to the moratorium. I would hold that petitioner cannot prevail on its breach of contract claim under the interpretation of the settlement agreement proposed by either party.

The 1997 moratorium provides, in relevant part:

(b) From the effective date of this act until 12 months after the effective date of this act, the Department of Health and Human Services *shall not approve* the addition of any adult care home beds for any type home or facility in the State, *except as follows*:

  (1) Plans submitted for approval prior to May 18, 1997, may continue to be processed for approval;

  (2) Plans submitted for approval subsequent to May 18, 1997, may be processed for approval if the individual or organization submitting the plan demonstrates to the Department that on or before August 25, 1997, the individual or organization purchased real property, entered into a contract to purchase or obtain an option to purchase real property, entered into a binding real property lease arrangement, or has otherwise made a binding financial commitment for the purpose of establishing or expanding an adult care home facility. An owner of real property who entered into a contract prior to August 25, 1997, for the sale of an existing building together with land zoned for the development of not more than 50 adult care home beds with a proposed purchaser who failed to consummate the transaction may, after August 25, 1997, sell the property to another purchaser and the Department may process and approve plans submitted by the purchaser for the development of not more than 50 adult care home beds. It shall be the responsibility of the applicant to establish, to the satisfaction of the Department, that any of these conditions have been met;

  (3) Adult care home beds in facilities for the developmentally disabled with six beds or less which are or would be

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

licensed under G.S. 131D or G.S. 122C may continue to be approved;

(4) If the Department determines that the vacancy rate of available adult care home beds in a county is fifteen percent (15%) or less of the total number of available beds in the county as of the effective date of this act and no new beds have been approved or licensed in the county or plans submitted for approval in accordance with subdivision (3) or (2) of this section which would make the vacancy rate above fifteen percent (15%) in the county, then the Department may accept and approve the addition of beds in that county; or

(5) If a county board of commissioners determines that a substantial need exists for the addition of adult care home beds in that county, the board of commissioners may request that a specified number of additional beds be licensed for development in their county. In making their determination, the board of commissioners shall give consideration to meeting the needs of Special Assistance clients. The Department may approve licensure of the additional beds from the first facility that files for .licensure and subsequently meets the licensure requirements.

1997 N.C. Sess. Laws 443 (emphasis added). This legislative enactment clearly precludes the Department of Health and Human Services from approving additional beds after the effective date of the legislation—1 July 1997—except pursuant to the specific circumstances enumerated in the session law. As petitioner's applications were for the purpose of adding beds that had not been licensed prior to 1 July 1997, the Department had the authority to approve them only if they fell within one of the exemptions. Further, the session law made no provision for new beds which would be categorically exempt from its application, but provided solely for exceptions by which the statutory prohibition could be avoided.

The moratorium was continuously in effect from 1 July 1997 through 30 June 1998 and again from 30 October 1998 through 31 December 2001, having been extended annually by legislative action. The moratorium was reinstated retroactively effective 1 July 1998 by session law 212 dated 30 October 1998. 1998 N.C. Sess. Laws 212.

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

After 31 December 2001, the approval of additional beds was authorized only subject to receipt of a Certificate of Need ("CON"). In the legislation authorizing the approval of additional beds subject to receipt of a CON, the General Assembly included limitations on the licensing of beds pursuant to the enumerated exemptions in the moratorium. 2001 N.C. Sess. Laws 234. These limitations provided that beds that qualified under one of the exemptions for which a license had not yet been obtained could no longer be developed unless evidence of qualifying financial commitments and developmental progress milestones was submitted to respondent by certain dates. It is undisputed that petitioner had not satisfied, and could not satisfy, these requirements.

The majority argues that this matter may be resolved without reaching any constitutional issues in the appeal as the language of the settlement agreement is unambiguous and North Carolina General Statutes, section 150B-22, which states that, "[i]t is the policy of this State that any dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty, should be settled through informal procedures," is dispositive. *See supra.* I cannot agree.

As noted by our Supreme Court, "[i]t has long been understood that it is the duty of the courts to determine the meaning of the requirements of our Constitution." *Leandro v. State of North Carolina,* 346 N.C. 336, 345, 488 S.E.2d 249, 253 (1997) (citing *Mitchell v. N.C. Indus. Dev. Fin. Auth.,* 273 N.C. 137, 144, 159 S.E.2d 745, 750 (1968), *Ex parte Schenck,* 65 N.C. 353, 367 (1871), *Bayard v. Singleton,* 1 N.C. 5, 6-7 (1787)). Moreover, "[w]hen a government action is challenged as unconstitutional, the courts have a duty to determine whether that action exceeds constitutional limits." *Id.* (citing *Maready v. City of Winston-Salem,* 342 N.C. 708, 716, 467, 467 S.E.2d 615, 620 (1996)). Such is the case in the instant matter.

One of the most basic tenets of our system of government is the separation of powers of the three branches. Article I, section 6 of the North Carolina Constitution provides "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." The General Assembly is vested with the legislative power of the State. N.C. Const. art. II, § 1. The duty of the executive branch, of which respondent is a part, is to ensure that legislation enacted by the General Assembly be "faithfully executed". N.C. Const. art. III § 5(4); *see also* N.C. Const. art. III, § 1.

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

The General Assembly may not delegate its authority to enact legislation to another branch of the government or a subordinate agency, however, it may allow an administrative body charged with executing the laws to determine the "facts to which the policy as declared by the Legislature shall apply." *Coastal Highway v. Turnpike Authority*, 237 N.C. 52, 60, 74 S.E.2d 310, 316 (1953). In doing so, the General Assembly must provide adequate standards for guidance to the administrative agency in finding the facts to which the legislation shall apply. *Id.* Significantly, although the General Assembly may delegate such fact finding power, it cannot delegate the authority to "apply or withhold the application of the law in [the agency's] absolute or unguided discretion." *Id.* (citing 11 Am. Jur., Constitutional Law, Sec. 234).

I believe that, viewed as urged by petitioner, the settlement agreement would be tantamount to allowing respondent to apply or withhold the application of the law in its unfettered discretion. This would constitute an *ultra vires* act and the settlement agreement thus would be null and void and petitioner would have no authority to develop the additional beds contained in the settlement projects under any circumstances. *Bowers v. City of High Point*, 339 N.C. 413, 424, 451 S.E.2d 284, 292 (1994) (quoting *Moody v. Transylvania County*, 271 N.C. 384, 388, 156 S.E.2d 716, 719 (1967)).

The majority holds that respondent had statutory authority to enter into the settlement agreement pursuant to North Carolina General Statutes, section 150B-22 (2005). This section merely establishes a State policy encouraging settlement of disputes between agencies and other parties through informal procedures. Although it is undisputed that respondent has authority to enter settlement agreements pursuant to this statutorily established policy, that authority is not without limitation. " '[A]n administrative agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislature [sic] grant of authority.' " *Boston v. N.C. Private Protective Services Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989) (quoting *In re Williams*, 58 N.C. App. 273, 279, 293 S.E.2d 680, 685 (1982)).

The Department of Health and Human Services was created pursuant to North Carolina General Statutes, section 143B-136.1, and its duties and express powers are set forth in sections 143B-137.1 through 216.66. I am unable to find any provision within these sec-

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

tions which authorizes respondent to exempt any person, organization, or project from the application of any duly enacted legislation to which such legislation otherwise would apply. Respondent's authority regarding the application of the moratorium, consequently, was limited to the authority delegated in the legislation itself. The authority granted to respondent in the legislation was limited to the determination of presence or absence of facts which would allow development of new beds pursuant to the enumerated exceptions.

Interpreted as urged by respondent, the settlement agreement would fall within the constraints placed upon the General Assembly's delegation of authority. Respondent entered into the settlement agreement pursuant to the State's policy to settle disputes through informal procedures based upon the decision of the superior court that petitioner's projects, including the settlement projects, fell within one of the enumerated exceptions to the moratorium. Consequently, the agreement would be enforceable as its terms were within respondent's authority. Under this interpretation, the settlement projects could be developed lawfully pursuant to the settlement agreement, subject to the constraints imposed by the subsequent legislation.

It is a well accepted canon of contract interpretation that where the words of a contract can be interpreted two different ways, one making the contract lawful and the other making it unlawful, the lawful interpretation is preferred. A. Corbin, *Corbin on Contracts* § 24.22 (1998); *see Great N.R.R. v. Delmar Co.*, 283 U.S. 686, 75 L. Ed. 1349 (1931). Interpreting the settlement agreement as suggested by petitioner, presents a situation in which the executive branch of our government has invaded the exclusive province of the legislative branch. In the instant case, the General Assembly enacted legislation, the validity of which is not at issue before this Court, and an agency of the executive branch purportedly disregarded its mandate to faithfully execute that legislation. The settlement agreement, therefore, would be unlawful. Interpreting the settlement agreement as urged by respondent, however, the actions of respondent do not violate the separation of powers doctrine. According to respondent's interpretation, the settlement agreement was entered into pursuant to a legislative delegation of authority to determine the existence of facts to which the enacted legislation will apply. Respondent's interpretation results in the settlement agreement being lawful and, therefore, is the preferred interpretation.

278 IN THE COURT OF APPEALS

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

Accordingly, I would hold that the development of the beds in question is subject to the subsequent legislation and affirm the trial court's summary judgment order.

Petitioner also assigns error to the trial court's grant of respondent's motion to dismiss on the grounds that the Administrative Law Judge ("ALJ") lacked jurisdiction over petitioner's claims. In its petition for contested case hearing, petitioner raised constitutional, breach of contract, and damages claims against respondent and the State of North Carolina as well as several of the claims set forth in North Carolina General Statutes, section 150B-51(b), including that "the Department ha[d] exceeded its authority and jurisdiction, acted erroneously, [and] failed to act as required by law and rule." See N.C. Gen. Stat. § 150B-51(b)(2)-(3), (6).

Petitioner's argue that North Carolina General Statutes, section 150B-51(b)(1) grants the trial court the jurisdiction to review the constitutionality of a statute if raised before OAH and appealed in a petition for judicial review. This is incorrect. The purpose of the statute is to allow the trial court to determine whether the agency "acted in violation of constitutional provisions" in reaching its decision—not whether an organic law of the General Assembly is unconstitutional as such determinations may not be made by administrative agencies, such as OAH. Our Supreme Court has made clear that administrative agencies do not have subject matter jurisdiction over constitutional issues. "[C]onstitutional claims will not be acted upon by administrative tribunals, . . ." *Johnston v. Gaston County*, 71 N.C. App. 707, 713, 323 S.E.2d 381, 384 (1984), *disc. rev. denied*, 313 N.C. 508, 329 S.E.2d 392 (1985); *see also Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 670, 509 S.E.2d 165, 174 (1998) (holding that, because constitutional determinations are the province of the judiciary, seeking a determination of the constitutionality of regulations before an administrative agency would have been in vain and, consequently, petitioner's administrative remedies were inadequate to address the constitutional claims and petitioner was not required to exhaust them prior to seeking a judicial determination of those issues); *Great American Ins. Co. v. Gold*, 254 N.C. 168, 173, 118 S.E.2d 792, 796 (1961) ("The question of constitutionality of a statute is for the judicial branch."). Petitioner's proper procedural course regarding its constitutional claims would have been to file a separate complaint alleging its constitutional claims in superior court. N.C. Gen. Stat. § 150B-43 (2003) (providing "[n]othing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of

CARILLON ASSISTED LIVING, LLC v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 265 (2006)]

any administrative action not made reviewable under this Article"). Fundamentally, Petitioner's challenge would require a determination of whether the application of the moratorium and the CON statute themselves are constitutional or not. Such a determination was beyond the scope of agency decisionmaking and therefore properly should have been raised *de novo* before the superior court. This is clear as Petitioner noted itself in its original contested case petition the reason for including the State of North Carolina as a party was because, *inter alia*, Petitioner sought to challenge "the constitutionality of certain laws enacted by the General Assembly." (R.p. 54) Accordingly, I would affirm the trial court's dismissal of petitioner's action with respect to the constitutional claims.

Petitioner also argues that, because the superior court has jurisdiction to decide constitutional issues, it should have considered those issues on appeal. Petitioner fails, however, to recognize that the sole issue raised on appeal was the propriety of the final agency decision which did not adopt the ruling of the ALJ. Petitioner also erroneously argues that, notwithstanding the well-settled caselaw to the contrary, the ALJ did have jurisdiction over its constitutional, breach of contract, and damages claims. See *Meads*, 349 N.C. 656, 509 S.E.2d 165; *Great American Insurance Co.*, 254 N.C. 168, 118 S.E.2d 792; *Johnston*, 71 N.C. App. 707, 323 S.E.2d 381. As noted *supra*, this is simply an incorrect understanding of our caselaw. This argument appears to be an attempt by petitioner to correct its procedural error in failing to preserve its constitutional claims without initially filing a complaint asserting those claims in superior court.

In light of the holding that I would make regarding the interpretation of the settlement agreement, I would hold that the issues pertaining to petitioner's breach of contract and damages claims become moot. Therefore, it is unnecessary to address those issues on appeal.

As discussed *supra*, petitioner's challenge of the constitutionality of the legislation was not properly before the ALJ. Accordingly, I do not believe that the issue was properly before the superior court on the petition for judicial review and believe petitioner's argument that the superior court erred in failing to grant summary judgment in its favor regarding the constitutionality of the retroactive application of the moratorium extension to the Gap Projects unpersuasive as well. Consequently, I would hold that the superior court properly did not reach the merits of the issue.

For the reasons stated above, I would affirm the order of the superior court.