MARY HEDGEPETH, PETITIONER v. NORTH CAROLINA DIVISION OF SERVICES FOR THE BLIND, RESPONDENT

No COA99-1240

(Filed 6 March 2001)

**1. Appeal and Error— appealability—jurisdiction to review final agency decision—not waived**

The question of whether the superior court had jurisdiction over a final agency decision involving the Division of Services for the Blind was reviewable even though it was raised for the first

time on appeal. Objections to jurisdiction can be raised at any time, even on appeal or by a court sua sponte.

**2. Administrative Law— review of final agency decision— Division of Services for Blind—federal Rehabilitation Act**

The superior court had jurisdiction to review a final agency decision from the Division of Services for the Blind under the federal Rehabilitation Act even though the Act did not then provide for judicial review of final agency decisions because neither the Act's statutory provisions nor federal cases expressly prohibited judicial review and the Department of Health and Human Services and its Division of Services for the Blind are not fully exempt from the North Carolina Administrative Procedure Act. Individuals aggrieved pursuant to the Rehabilitation Act are not required to seek administrative review in a contested case hearing before the OAH via the contested case hearing provisions of the NCAPA. Respondent here established procedures for internal review of agency decisions and petitioner utilized the procedures mandated by the Rehabilitation Act and the State administrative code.

**3. Administrative Law— review of final agency decision— standard of review not stated for each separate issue**

A trial court review of a final agency decision of the Division of Services for the Blind was reversed and remanded where the trial court stated the proper standards of review (both de novo and whole record) but failed to delineate which standard the court utilized in resolving each separate issue raised. Moreover, the confusion inherent in the trial court's order is compounded by the lack of a transcript or other record of proceedings before the Superior Court.

Appeal by petitioner from order entered 1 July 1999 by Judge Frank R. Brown in Superior Court, Nash County. Heard in the Court of Appeals 25 August 2000.

*Eastern Carolina Legal Services, by Hazel Mack-Hilliard, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Diane Martin Pomper, for respondent-appellee.*

TIMMONS-GOODSON, Judge.

Mary Hedgepeth ("petitioner") appeals an order by the Superior Court affirming the decision of the Division of Services for the Blind ("respondent") to deny petitioner additional benefits under the Rehabilitation Act of 1973 (the "Rehabilitation Act" or "Act"), 29 U.S.C. § 701, *et seq.* (1994). For the reasons stated herein, we reverse the trial court's order and remand the matter for entry of a new order in accordance with this opinion.

Under the Rehabilitation Act, the federal government administers grants to states for the provision of services "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C. § 701(b)(1); 34 C.F.R. § 361.1 (1997). States, such as North Carolina, choosing to accept federal grants as provided for by the Act, must comply with the Act's guidelines and regulations. *Buchanan v. Ives*, 793 F. Supp. 361, 363 (D. Me. 1991) (citation omitted).

In 1985, respondent, a division of the agency charged with administering the federal program in our State, *see* N.C. Gen. Stat. § 143-546.1 (1999), deemed petitioner eligible for services and benefits under the Act, due to a loss of vision she experienced as a junior college student. The Act requires that those eligible for the program, such as petitioner, jointly develop with respondent a particularized plan to fit the individual's vocational rehabilitative needs, an "individualized written rehabilitation plan" ("IWRP"). 29 U.S.C. § 722(b)(1)(A) (1994); 34 C.F.R. § 361.45. To that end, in 1986, petitioner and respondent developed an IWRP, which included the goal of "occupations in business" and provided for a variety of services assisting petitioner in achieving her vocational goal. In 1988, petitioner received a two-year associate degree in "Business Administration."

Petitioner's IWRP was amended on four occasions between 1989 and 1995. The amendments to the IWRP reflected a variety of vocational goals to be achieved by a specified date, and further provided for services and financial aid.

Pursuant to an amended IWRP formulated in 1995, petitioner received a two-year associate degree in "Social Work" in 1997. Upon earning her degree, petitioner was accepted into a four-year psychology program at a private college. In September 1997, petitioner met with her rehabilitation counselor, Patricia Tessnear, Tessnear's

supervisor, and a job placement specialist. During the meeting, petitioner requested that respondent amend her IWRP to include a four-year college degree program as part of her vocational goals. Tessnear informed petitioner that respondent had provided adequate services to remove impediments to her educational and employment objectives and, therefore, she would no longer receive educational assistance. Instead, respondent offered petitioner only job placement services.

In December 1997, petitioner requested an amendment to her IWRP, reflecting the goal of "Licensed Professional Counselor." Respondent denied petitioner's request and advised her of her right to appeal its decision, which she did on 11 January 1998. Following a 3 April 1998 hearing, an agency hearing officer recommended that respondent's decision be affirmed, and respondent's director adopted the hearing officer's recommendation as the "final agency decision" on 18 May 1998. Petitioner petitioned for judicial review of the agency's final decision in Superior Court, Nash County. The Superior Court affirmed the final agency decision, and petitioner now appeals.

[1] We first address respondent's contention that the Superior Court did not have subject matter jurisdiction to review the final agency decision in the case *sub judice*. As a preliminary issue, we note that respondent first raised the aforementioned issue on appeal. Nonetheless, it is well established that objections to a court's jurisdiction can be raised at any time, even for the first time on appeal and even by a court *sua sponte. Reece v. Forga*, 138 N.C. App. 703, 704, 531 S.E.2d 881, 882 (citations omitted) ("A party may not waive jurisdiction, and a court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action *ex mero motu* when subject matter jurisdiction is lacking."), *disc. review denied*, 352 N.C. 676, —— S.E.2d —— (2000). We therefore address respondent's arguments and determine whether the Superior Court had jurisdiction over the present case.

[2] Respondent first asserts that the Superior Court did not have jurisdiction to review the final agency decision because the Rehabilitation Act, including amendments applicable to petitioner, did not provide for judicial review of the decision. In support of its argument, respondent cites several federal court cases finding there was no private right of action under the Act.

The Rehabilitation Act, as amended in 1998, currently provides for judicial review of agency decisions. *See* 29 U.S.C.A. § 722(c)(5)(J)(i) (West 2000) (providing that aggrieved parties "may bring a civil action" in state or federal court for review of final agency decisions). However, the current version of the Act took effect on 7 August 1998, prior to the agency's final decision and is, therefore, inapplicable to petitioner. Respondent is correct in that the Rehabilitation Act applicable to petitioner, as amended in 1993, did not provide for judicial review of final agency decisions. However, the Act's statutory provisions did not expressly prohibit judicial review, and neither do the federal cases cited by respondent. *See Mallet v. Wisconsin Div. of Vocational Rehab.*, 130 F.3d 1245 (7th Cir. 1997) (finding no private right of action); *McGuire v. Switzer*, 734 F. Supp. 99 (S.D.N.Y. 1990) (same); *Ryans v. New Jersey Comm'n for the Blind & Visually Impaired*, 542 F. Supp. 841 (D.N.J. 1982) (same). *But see Marshall v. Switzer*, 10 F.3d 925, 929 (2d Cir. 1993) (finding that Congress did not intend to foreclose enforcement of Act under 42 U.S.C. § 1983 (1994)); *Scott v. Parham*, 422 F. Supp. 111 (N.D. Ga. 1976) (same). These cases simply conclude that there is no private right of action, implied or otherwise, under the Act, but do not speak to a trial court's judicial review of an agency decision. We therefore find the cases cited by respondent unpersuasive.

Moreover, many states provided for judicial review of agency decisions based on the Act's guidelines and regulations prior to the statute's express provision for civil actions and judicial review. *See e.g., Dolon v. Family and Soc. Servs. Admin. Div. of Disability, Aging and Rehab. Servs.*, 715 N.E.2d 917 (Ind. Ct. App. 1999); *In the Matter of Wenger*, 504 N.W.2d 794 (Minn. Ct. App. 1993); *Murphy v. Office of Vocational and Educ. Servs. for Individuals with Disabilities*, 705 N.E.2d 1180 (N.Y. Ct. App. 1998); *Brooks v. Office of Vocational Rehab.*, 682 A.2d 850 (Pa. Commw. Ct. 1996); *Zingher v. Dep't of Aging and Disabilities*, 664 A.2d 256 (Vt. 1995). We therefore conclude that although the Rehabilitation Act applicable to petitioner may not have provided for review of an agency's final decision, nothing in the Act itself or the cases cited by respondent precludes judicial review.

Our examination of the issue of jurisdiction does not end there, however. "No appeal lies from an order or decision of an administrative agency of the State or from judgments of special statutory tribunals whose proceedings are not according to the course of the common law, unless the right is granted by statute." *In re Assessment*

*of Sales Tax,* 259 N.C. 589, 592, 131 S.E.2d 441, 444 (1963). As noted *supra,* the Rehabilitation Act did not grant petitioner a right of review of the agency's final decision and therefore, if she has such a right, it is by and through North Carolina Administrative Procedure Act ("NCAPA").

The NCAPA, codified at Chapter 150B of the General Statutes, "establishes a uniform system of administrative rule making and adjudicatory procedures for agencies" and "applies to every agency," unless an agency is expressly exempt from its provisions. N.C. Gen. Stat. § 150B-1(a), (c) (1995); *Vass v. Bd. of Trustees of State Employees' Medical Plan,* 324 N.C. 402, 407, 379 S.E.2d 26, 29 (1989) ("the General Assembly intended only those agencies it expressly and unequivocally exempted from the provisions of the [NCAPA] be excused in any way from the Act's requirements and, even in those instances, that the exemption apply only to the extent specified by the General Assembly").

> Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision . . . , unless adequate procedure for judicial review is provided by another statute, in which case the review shall be under such other statute.

N.C. Gen. Stat. § 150B-43 (1995). Neither the Department of Health and Human Services nor its Division of Services for the Blind are fully exempt from the NCAPA. Respondent's proceedings, at least in part, are therefore subject to the provisions of the NCAPA.

Respondent acknowledges that petitioner may have had the right to judicial review pursuant to Chapter 150B, but points out that petitioner did not seek a contested case hearing before the State Office of Administrative Hearings ("OAH"). Respondent asserts that only individuals who seek hearings through the OAH have a right to judicial review under the NCAPA. Respondent argues that the NCAPA only allows judicial review in "contested cases" and that "[a] contested case is an action heard in the [OAH]." We disagree.

It is well established that "the superior court is without jurisdiction to conduct a judicial review of an agency decision sought by an aggrieved party, pursuant to [section] 150B-43, who has not first had *the administrative hearing to which he is entitled." Deep River Citizens Coalition v. N.C. Dept. of E.H.N.R.,* 119 N.C. App. 232, 234,

457 S.E.2d 772, 774 (1995) (emphasis added). The NCAPA states, in pertinent part:

> The contested case provisions of [Chapter 150B of the North Carolina General Statutes] apply to all agencies and all proceedings not expressly exempted . . . . The contested case provisions of this Chapter do not apply to the following:
>
> . . . .
>
> (5) Hearings required pursuant to the Rehabilitation Act . . . , as amended and federal regulations promulgated thereunder.

N.C. Gen. Stat. § 150B-1(e)(5).

Considering the aforementioned statutory provision, we conclude that individuals aggrieved pursuant to the Rehabilitation Act are not required to seek administrative review in a contested case hearing before the OAH via the contested case hearing provisions of the NCAPA. Rather, they are entitled to a hearing governed by procedures established by the Rehabilitation Act. The Act and its corresponding federal regulations mandate that directors of state agencies administering services under the Act "shall establish procedures for the review of determinations made by the rehabilitation counsel" in which an aggrieved individual shall be "provid[ed] an opportunity . . . for the submission of additional evidence and information to an impartial hearing officer." 29 U.S.C. § 722(c); 34 C.F.R. § 361.57. In accordance with the aforementioned guidelines, respondent established procedures for internal review of agency decisions pursuant to the Act. 10 N.C. Admin. Code 19G.0801 -.0823 (June 1998).

Under section 150B-2 of our General Statutes, a "contested case" is "an administrative proceeding pursuant to this Chapter to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges." N.C. Gen. Stat. § 150B-2(2) (1995). This Court has previously stated that a "contested case" includes "*any agency proceeding*, by whatever name called, wherein the legal rights, duties and privileges of a party are required by law to be determined by an agency after . . . an adjudicatory hearing." *Community Psychiatric Ctrs. v. N.C. Dept. of Human Resources*, 103 N.C. App. 514, 515, 405 S.E.2d 769, 770 (1991) (emphasis added) (citations omitted); *see also Charlotte-Mecklenburg Hosp. Authority v. N.C. Dept. of Human Resources*, 83 N.C. App. 122, 349 S.E.2d 291 (1986); *In re Construction of Health Care Facility*, 55 N.C. App. 313,

285 S.E.2d 626 (1982). Moreover, this Court has concluded that judicial review of agency decisions in Superior Court, pursuant to section 150B-43, was proper in at least two cases where no proceedings were held before the OAH. *See Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 112 N.C. App. 566, 572, 436 S.E.2d 594, 598 (1993) (citations omitted) ("although there was no hearing before an ALJ, there was an agency proceeding . . . determining the rights of a party"), *rev'd on other grounds*, 337 N.C. 569, 447 S.E.2d 768 (1994); *Charlotte Truck Driver Training School v. N.C. DMV*, 95 N.C. App. 209, 212, 381 S.E.2d 861, 862-63 (1989) (finding that interview and investigation by agency hearing officer is contested case); *see also* 10 Admin. Code 19G.0827 (June 1998).

In the case *sub judice*, petitioner did not seek review through the OAH, but utilized procedures mandated by the Rehabilitation Act and our State's administrative code. In fact, according to the NCAPA, petitioner was not entitled to seek review through the OAH. Although the petitioner's claims were not heard by an Administrative Law Judge, they were heard by an agency hearing officer, at a proceeding in which petitioner and respondent were allowed to submit and cross-examine evidence. Respondent's director reviewed and affirmed the hearing officer's decision, in accordance with its own regulations. *See* 10 N.C. Admin. Code 19G.0823. The director's decision, therefore, became the final agency decision. 10 N.C. Admin. Code 19G.0823(d).

We find the aforementioned proceeding sufficient to constitute a "contested case" for the purpose of judicial review under section 150B-43 of our General Statutes. Therefore, we conclude that the Superior Court had jurisdiction over the petition submitted below.

[3] As in any case, we must next determine the scope of our review. The NCAPA mandates the scope of the Superior Court's review of final agency decisions in section 150B-51 of our General Statutes. N.C. Gen. Stat. § 150B-51 (1995). Hearings conducted under the Rehabilitation Act are partially exempt from section 150B-51. Trial courts reviewing final agency decisions pursuant to the Rehabilitation Act are not required to determine whether the agency heard new evidence in making its final decision, nor are they required to determine whether the agency specifically stated its reasons for failing to adopt an ALJ's decision. N.C. Gen. Stat. §§ 150B-51(a) and 150B-1(e)(5) ("Hearings required pursuant to [the Act]" are exempt from the NCAPA's contested case provisions, and "[N.C.]G.S. 150B-51(a) is considered a contested case hearing provision that does not apply to

these hearings"). However, final agency decisions pursuant to the Rehabilitation Act are not exempt from review under section 150B-50(b), which states, in pertinent part:

> [T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b).

The petitioner's "characterization of the alleged error on appeal 'dictates' the method or scope of review." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118 (1994) (quoting *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 580, 281 S.E.2d 24, 29 (1981)). However, "more than one method may be utilized 'if the nature of the issues raised so requires.' " *Id.* (quoting *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) (citation omitted)).

If the petitioner alleges that the agency decision is based on an error of law, the proper review is *de novo* review. In contrast, if petitioner "questions (1) whether the agency's decision was supported by the evidence or (2) whether the agency's decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." *McCrary*, 112 N.C. App. at 165, 435 S.E.2d at 363 (citation omitted). "Because " '[d]e novo" review requires a court to consider a question anew, as if not considered or decided by the agency' previously, the trial court must make its own findings of fact and conclusions of law and cannot defer to the agency its duty to do so." *Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 577, 528 S.E.2d 927,

929 (2000) (emphasis added) (citation omitted). However, in conducting "whole record review," the trial court must "examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.'" *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118.

This Court has struggled to define the proper appellate standard for reviewing superior court orders examining agency decisions, often with divergent results. *See generally Amanini*, 114 N.C. App. at 675-76, 443 S.E.2d at 118-19. However, our Supreme Court has recently confirmed that the proper scope of our review is as follows:

> "the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly."

*ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation omitted); *see also Amanini*, 114 N.C. App. at 676, 443 S.E.2d at 119 ("the statutory provisions for judicial review . . . at the trial court level would appear to lack purpose if that court's determination is to be given no consideration at the appellate level"). As such, "[t]he trial court, when sitting as an appellate court to review [an agency decision], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999).

We therefore examine the Superior Court's order to determine whether it conducted the appropriate scope of review and whether it conducted that review properly. In so doing, we find the case of *In Re Appeal of Willis*, 129 N.C. App. 499, 500 S.E.2d 723 (1998), particularly instructive.

In *Willis*, the petitioners sought a writ of certiorari and declaratory judgment in Superior Court, asserting that a city board of adjustment ("the Board") erroneously found the petitioner in violation of an ordinance. The Superior Court reversed the Board's decision, and the Board appealed to this Court.

Our Court found that review of the Superior Court's decision was analogous to our review of superior court orders examining agency decisions. *Id.* at 500-01, 500 S.E.2d at 725-26. In their briefs to the trial

court, the petitioners asserted in separate arguments that the Board's decision was not supported by the evidence, that the Board's decision was arbitrary and capricious, and that the Board's decision was based on errors of law. *Id.* at 502, 500 S.E.2d at 725. In support of its order setting aside the Board's decision, the trial court cited a "lack of 'defined criteria or objective standards' within the record to support the Board's 'erroneous' and 'arbitrary' conclusions." *Id.* The trial court further stated that its decision was " '[b]ased upon [the court's] review of the stipulated record in this matter,' indicating the court employed the whole record test in reaching its decision." *Id.* (alterations in original) (citation omitted). "[T]he trial court's order also asserted its right to 'substitute its judgment [for that of the Board] as to conclusions of law,' suggesting it may also have applied *de novo* review." *Id.* (alterations in original) (citation omitted).

In reversing the trial court's judgment and remanding the case for a new order, this Court stated:

> [W]hile the court's order in effect set out the applicable standards of review, it failed to delineate which standard the court utilized in resolving each separate issue raised by the parties. Moreover, while the court may have disagreed with the parties' characterization of the issues, it failed to specify its own "determin[ation of] the actual nature of the contended error" before proceeding with its review. *Amanini,* 114 N.C. App. at 675, 443 S.E.2d at 118. As a result of these omissions, this Court is unable to make the requisite threshold determination that the trial court "exercised the appropriate scope of review," *id.* at 675, 443 S.E.2d at 118-19, and we decline to speculate in that regard. It follows that we likewise are unable to determine whether the court properly conducted its review. *See Act-Up,* 345 N.C. at 706, 483 S.E.2d at 392.

*Id.* at 503, 500 S.E.2d at 726-27 (alteration in original); *Jordan,* 137 N.C. App. at 578, 528 S.E.2d at 930; *see also Sutton,* 132 N.C. App. 387, 511 S.E.2d 340 (vacating and remanding for new order where original order was silent as to scope of review).

In the case *sub judice*, petitioner raised and enumerated several distinct, alleged errors below, asserting that certain findings of fact made by the hearing officer were "unsupported by substantial evidence in view of the entire record" and that many of his conclusions of law were "erroneous." Petitioner further asserts that one of the hearing officer's conclusions of law was arbitrary and capricious. The

HEDGEPETH v. N.C. DIV. OF SERVS. FOR THE BLIND

[142 N.C. App. 338 (2001)]

Superior Court should have, therefore, reviewed petitioner's alleged errors *de novo* and in accordance with the "whole record" test, depending upon the specific enumerated error.

In its order affirming the final agency decision, the Superior Court did not examine each distinct error or delineate a *de novo* review of the conclusions of law that petitioner argued were erroneous. Rather, in affirming the agency decision, the court noted the following:

> Petitioner sought both "whole record" and *de novo* review of a final agency decision of [respondent]. Having concluded *that* review, the Court finds that the decision was based on substantial evidence, was not arbitrary or capricious and was not affected by error of law. (Emphasis added.)

Like the Superior Court in *Willis*, the trial court in the case *sub judice* stated the proper standards of review sought by petitioner. However, it too "failed to delineate which standard the court utilized in resolving each separate issue raised." *Willis*, 129 N.C. App. at 503, 500 S.E.2d at 727. Furthermore, it is difficult to discern whether the trial court actually conducted both a "whole record" and *de novo* review. Although, as noted *supra*, the court set out both types of review sought by petitioner, it did not expressly state that both reviews were conducted, only that it conducted "that" review. We are left to question whether "that" referred to only a "whole record" review, *de novo* review, or both. Moreover, the confusion inherent in the trial court's order is compounded by the lack of a transcript or other record of the proceedings, if any, before the Superior Court in the record on appeal. Given the nature of the trial court's order, we find ourselves unable to conduct our necessary threshold review. And, like the *Willis* court, "we decline to speculate in that regard." *Id.*

Accordingly, we reverse the trial court's order and remand this matter for a new order in accordance with our opinion. We direct the trial court to (1) advance its own characterization of the issues presented by petitioner and (2) clearly delineate the standards of review, detailing the standards used to resolve each distinct issue raised.

Reversed and remanded.

Judges WYNN and McGEE concur.