LEON KEA, Petitioner v. DEPARTMENT OF HEALTH AND HUMAN SERVICES, O'BERRY CENTER, Respondent

No. COA01-612

(Filed 5 November 2002)

**1. Administrative Law— judicial review—questions of law— de novo standard**

The trial court did not err by applying the de novo standard of review to a State Personnel Commission decision terminating petitioner for sexual harassment where petitioner sought judicial review of the Commission's decision based in part on questions of whether some of the Commission's conclusions were supported by the record, whether respondent failed to act as required by law, and whether petitioner's dismissal was without just cause. These are questions of law subject to de novo review.

**2. Public Officers and Employees— notification of specific allegations—disciplinary action—simultaneous**

The trial court erred by holding that a state employee dismissed for sexual harassment did not receive due process where petitioner received the predisciplinary conference required under 25 N.C.A.C. § 1J.0608(b) and the notification mandated by N.C.G.S. § 126-35 in that he was informed of the allegations against him and given a chance to respond in an initial meeting at which he was asked to submit a written statement; a second meeting occurred; petitioner subsequently received a letter which set forth in detail the allegations against him and informed him of a predisciplinary conference; and, following that conference, petitioner received a dismissal letter which set out the specific acts or omissions supporting his dismissal.

**3. Public Officers and Employees— predisciplinary conference—prior conclusions—no due process violation**

The trial court erred by ruling that a state employee accused of sexual harassment was denied due process by biased decision-making where the employee contended that a deputy director had reached conclusions prior to the predisciplinary conference, but those conclusions were based on an extensive investigation and the decision to dismiss petitioner was upheld by both the State Personnel Commission and the Secretary of the Department of Health and Human Services. Due process was not violated by the deputy director acting as investigator or reaching prior conclusions, absent evidence of a disqualifying personal bias.

**4. Public Officers and Employees— unacceptable personal conduct—sexual harassment—sufficiency of evidence**

The trial court erred by ruling that a state employee dismissed for sexual harassment was denied due process where there was sufficient evidence to support the State Personnel Commission's findings and those findings supported the conclusion that petitioner was dismissed for just cause based on unacceptable personal conduct.

Judge Hudson dissenting.

Appeal by respondent from order entered 2 April 2001 by Judge Narley C. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 21 February 2002.

KEA v. DEPARTMENT OF HEALTH & HUMAN SERVS.

[153 N.C. App. 595 (2002)]

*Pueschel & Associates, by Janet I. Pueschel, for petitioner-
appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General
Lisa Granberry Corbett, for respondent-appellant.*

CAMPBELL, Judge.

The North Carolina Department of Health and Human Services
("respondent") appeals from the trial court's order reversing the
State Personnel Commission's ("Commission") Decision and Order
upholding the dismissal of Leon Kea ("petitioner") from his employ-
ment at O'Berry Center, a State facility for the mentally retarded.
After careful consideration of the record and briefs, we reverse the
trial court's order and remand for reinstatement of the Decision and
Order of the Commission.

Petitioner was dismissed from his position as Cluster
Administrator at O'Berry Center on 13 August 1998. The reason given
for his dismissal was unacceptable personal conduct. The miscon-
duct arose out of his relationship with a subordinate employee,
Veronica Ham ("Ham"), and respondent's subsequent investigation of
that relationship. Specifically, petitioner was dismissed for: (1) treat-
ing Ham in a special and preferential way; (2) sexually harassing
Ham; (3) retaliating against Ham; (4) disobeying a direct order by
reporting to work and discussing the investigation with staff while on
investigative status; (5) failing to follow educational leave procedures
regarding Ham's educational leave in the Spring of 1998; and (6) fail-
ing to follow procedures by allowing Ham to enter requisitions with-
out prior authorization. Petitioner was informed of his dismissal by
letter dated 12 August 1998. Petitioner followed respondent's internal
grievance procedure. Petitioner's dismissal was subsequently upheld
by the Secretary of the Department of Health and Human Services by
letter dated 19 November 1998. On 11 December 1998, pursuant to
N.C. Gen. Stat. §§ 126-34.1 and 150B-23, petitioner filed a contested
case petition with the Office of Administrative Hearings. Petitioner
alleged he was terminated without just cause in violation of N.C. Gen.
Stat. § 126-35, his due process rights were violated in that he was not
provided with an unbiased pre-termination hearing, and respondent
violated the specificity requirements of N.C. Gen. Stat. § 126-35.
Petitioner sought reinstatement with back pay and benefits.

Following a hearing, an administrative law judge ("ALJ") issued a
Recommended Decision on 22 December 1999. The ALJ made the fol-

lowing findings of fact: Petitioner began working as a Cluster Administrator at O'Berry Center on 1 February 1993. As Cluster Administrator, petitioner was responsible for overseeing the staff that provided care for the residents in his cluster, which consisted of four units referred to as group homes. In 1996, Veronica Ham was hired as a DT/Escort for Cluster 1, the cluster administered by petitioner. Each cluster had a DT/Escort staff position. As a DT/Escort, Ham's job duties included "normal Developmental Technician [DT] daily client care duties and additional duties of providing transportation and escort to clients needing services off of the home unit." Ham's work hours were 7:00 a.m.-3:30 p.m. She was supervised by Deborah Martin ("Martin"), Group Home Director for Group Home 1. Martin supervised Ham until Ham took maternity leave.

While Ham was home on leave, petitioner called and asked if she would like an office when she returned to work and told her that her work hours would be 8:00 a.m-5:00 p.m. with holidays and weekends off. Ham returned to work in October 1996 and was given office space in Cluster 1. While her job position remained DT/Escort, she was now assigned to Group Home 2, whose Director was Greg Anderson ("Anderson"). However, Ham was not supervised by Anderson. Instead, she reported directly to petitioner. Petitioner instructed Ham to perform various office clerical duties, including requisitions, work schedules, and answering phones. These duties were different from the job duties of a DT/Escort. Petitioner also instructed Ham to use the budget code number of another employee in order to make requisition requests to the central budget office. The ALJ found that petitioner knew allowing Ham to use another employee's budget code violated State Budget Office procedures requiring only the person assigned a budget code be given access to the code and requisition system in order to avoid fraud.

In the Spring of 1998, petitioner allowed Ham to take time off from work to pursue a degree at Wayne Community College. Ham never filled out a request for educational leave and was informed by petitioner that she did not have to account for the time. Petitioner never talked to Ham about using compensatory time for her classes and her time sheets reflect she listed her time in class as time worked. The ALJ found that petitioner was familiar with O'Berry Center's policy on educational leave, and his failure to properly approve and supervise Ham's educational leave was a violation of O'Berry Center's policy.

Following Ham's return to work in October 1996, petitioner frequently asked her to lunch and frequently complimented her on her appearance. Ham never accepted petitioner's lunch invitations. Petitioner commented to Ham that large penises ran in his family, asked her if she was on birth control so that when the two of them had sex he would know she was protected, and invited her to go to Raleigh to stay with him and have sex. He also had other conversations with Ham about his sexual attraction to her.

Ham was subsequently accepted to Nursing School at Wayne Community College. She informed petitioner and was told to fill out the educational leave form and that it would be no problem for her to attend the classes.

On 8 June 1998, the day petitioner completed Ham's performance review, he resumed talking about the possibility of the two of them having a relationship. Ham responded, "We can't do this . . . [y]ou've got a wife. You're a minister. This is wrong. I've already told you 'no'." The next day, petitioner apologized to Ham for his conduct and told her he could no longer supervise her. Ham was informed that she was being transferred back to Group Home 1, where she would be supervised by Deborah Martin. Martin would now be responsible for approving Ham's educational leave. Ham would no longer have office space, her work hours would revert back to normal DT/Escort hours, and she would be assigned normal DT/Escort duties. At the time of the transfer, petitioner knew of past problems between Ham and Martin. However, following the transfer, petitioner refused to consider options for Ham to continue her education and told her the decision was up to Martin.

Ham spoke with Greg Anderson, Group Home Director for Group Home 2, about petitioner's sexual interest in her and told Anderson she believed her transfer was retaliation for her refusal to have sex with petitioner. Anderson suggested Ham report petitioner's conduct to Eugene Hightower, respondent's Employee Relations Specialist. On 15 July 1998, Ham filed a sexual harassment complaint against petitioner. Specifically, the complaint alleged that petitioner, in retaliation for Ham's refusal to have sex with him, disapproved her educational leave that he had previously verbally supported and threatened to transfer her to a work site where she had previously experienced problems.

On 17 July 1998, Eugene Hightower and Frank Farrell ("Farrell"), respondent's Deputy Director of Client Services, met with petitioner

to discuss the sexual harassment complaint. Petitioner admitted he had asked Ham to meet him for dinner on his way back from Raleigh. Petitioner also admitted that and he and Ham once had a conversation about the possibility of having sex. However, petitioner denied ever asking Ham for sex or harassing her in any way. Petitioner told Farrell he had elected to transfer Ham because there was an attraction between the two of them and he felt it was inappropriate for him to continue supervising her.

On 17 July 1998, petitioner was placed on investigative status with pay and advised not to return to O'Berry Center or speak to anyone about the investigation. Petitioner was only given permission to attend Public Manager's training in Raleigh on 20 July and 21 July. Nevertheless, after being placed on investigative status on 17 July, petitioner spoke with three employees and informed them of his suspension. In addition, petitioner came to O'Berry Center on 21 July and spoke with Deborah Martin about Ham's sexual harassment complaint. Finally, on 22 July, petitioner returned to work at the normal time and was told to leave campus immediately.

Petitioner met with Farrell again on 27 July 1998, at which time petitioner changed his story and denied having asked Ham to dinner and having had a conversation with Ham about the possibility of the two of them having sex.

On 30 July 1998, Farrell sent petitioner a letter setting out the specific allegations against him and the conclusions that had been reached up to that point in the investigation. Petitioner was informed that a predisciplinary conference was scheduled for 4 August 1998. Petitioner submitted a written statement to Farrell and the two men discussed the allegations at the predisciplinary conference. Following the conference, petitioner was notified by letter dated 12 August 1998 that he was dismissed for unacceptable personal conduct and informed of the reasons.

The ALJ found as fact that petitioner's credibility was questionable because he had changed his story during the course of the investigation.

Based on his findings of fact, the ALJ made the following pertinent conclusions of law:

3. A violation of known and written work rules constitutes unacceptable personal conduct.

4. Preferential treatment combined with sexual harassment of an employee constitutes unacceptable personal conduct.

5. Petitioner failed to meet his burden of proof. The greater weight of the evidence is that Petitioner violated known and written work rules, gave an employee preferential treatment, sexually harassed an employee, and disobeyed a direct order of his supervisor.

6. Respondent DHHS has just cause to discipline Petitioner up to and including dismissal.

7. Petitioner was afforded his statutory due process rights at each stage of the dismissal process including proper notice of the grounds for his dismissal.

Based on his findings and conclusions, the ALJ recommended petitioner's dismissal be affirmed.

On 11 May 2000, the State Personnel Commission adopted the recommended findings of fact and conclusions of law of the ALJ *in toto* and ordered that respondent's dismissal of petitioner be affirmed.

Pursuant to N.C. Gen. Stat. § 150B-43, petitioner sought judicial review of the Commission's decision on the grounds that certain findings of fact and conclusions of law were not "complete, accurate or supported by the record," that respondent failed to act as required by law, that respondent acted erroneously and capriciously, and that petitioner's dismissal was without just cause.

On 30 March 2001, the superior court entered an order reversing the Commission's decision and ordering that petitioner be reinstated and awarded back pay and benefits. The superior court's decision was based on the following conclusions:

6. That Petitioner Kea was not afforded constitutionally guaranteed due process by Respondent during the process of his discharge from the O'Berry Center and that the Commission's decision was in violation of Constitutional provisions, affected by error of law, and unsupported by substantial evidence admissible under N.C.G.S. § [150B]-29(a), [150B]-30, or 150[B]-31;

Respondent appeals.

A final agency decision may be reversed or modified by the superior court if the agency's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2001). The standard of review employed by the superior court is determined by the type of error asserted by the petitioner; errors of law are reviewed *de novo*, while the whole record test is applied to review allegations that the agency decision was not supported by the evidence, or was arbitrary and capricious. *Zimmerman v. Appalachian State Univ.*, 149 N.C. App. 121, 129, 560 S.E.2d 374, 379 (2002) (citing *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 443 S.E.2d 114 (1994). "*De novo* review requires a court to consider the question anew, as if the agency has not addressed it." *Blalock v. N.C. Dep't of Health and Human Servs.*, 143 N.C. App. 470, 475-76, 546 S.E.2d 177, 182 (2001). Under the whole record test, "the reviewing court [must] examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). In reviewing a superior court order from an appeal of an agency decision, this Court has a two-fold task: "(1) determine whether the trial court exercised the appropriate scope of review and, if appropriate; (2) decide whether the court did so properly." *Deep River Citizen's Coalition v. N.C. Dep't of Env't & Natural Res.*, 149 N.C. App. 211, 213, 560 S.E.2d 814, 816 (2002).

[1] Respondent first contends the superior court erred in applying the *de novo* standard of review because petitioner never raised errors of law for the superior court to review. We disagree.

KEA v. DEPARTMENT OF HEALTH & HUMAN SERVS.

[153 N.C. App. 595 (2002)]

Petitioner sought judicial review of the Commission's final agency decision on the grounds that many of its findings of fact were not supported by the whole record and that respondent's decision was capricious. Such errors are subject to the whole record test. *See Zimmerman*, 149 N.C. App. at 129, 560 S.E.2d at 379. However, petitioner also alleged that several of the Commission's conclusions of law, including its conclusion that petitioner was afforded due process and given proper notice of the grounds for his dismissal, were not supported by the record, that respondent failed to act as required by law, and that petitioner's dismissal was without just cause. These are all questions of law which are subject to *de novo* review. *See id.* In its order, the superior court recited that it had reviewed the whole record and conducted a *de novo* review. Accordingly, we conclude the superior court applied the proper standards of review and we must now determine whether it applied these standards correctly.

**[2]** As grounds for its decision to reverse the State Personnel Commission, the superior court concluded petitioner was not afforded due process by respondent during the course of his dismissal. Respondent argues that petitioner's due process rights were not violated. Petitioner contends he was not given sufficient notice of the grounds for his dismissal and was not given the required oral and written warnings. Petitioner further contends he was denied a fair and impartial decision maker because Farrell had reached certain conclusions prior to the predisciplinary conference.

Pursuant to N.C. Gen. Stat. § 126-35(a) (2001), "[n]o career State employee subject to the State Personnel Act ["Act"] shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." "Just cause" for dismissal of a career State employee subject to the Act includes unsatisfactory job performance and unacceptable personal conduct. 25 N.C.A.C. § 1J.0604(b) (2002). Prior to dismissal for unsatisfactory job performance, a career State employee "must first receive two prior disciplinary actions[.]" 25 N.C.A.C. § 1J.0605(b). The employee is entitled to (1) one or more written warnings followed by (2) "a warning or other disciplinary action which notifies the employee that failure to make the required performance improvements may result in dismissal." *Id.* However, an employee "may be dismissed for a current incident of unacceptable personal conduct, without any prior disciplinary action." 25 N.C.A.C. § 1J.0608(a). Dismissals for unacceptable personal conduct only require (1) a pre-dismissal conference between the employee and the person recommending dismissal, and (2) written notification of the

specific reasons for the dismissal and the employee's right to appeal. 25 N.C.A.C. § 1J.0608(b), (c); N.C. Gen. Stat. § 126-35(a). Unacceptable personal conduct includes:

(1) conduct for which no reasonable person should expect to receive prior warning; or

(2) job-related conduct which constitutes a violation of state or federal law; or

. . .

(4) the willful violation of known or written work rules; or

(5) conduct unbecoming a state employee that is detrimental to state service; or

. . . .

25 N.C.A.C. § 1J.0614(i).

Petitioner was dismissed for, *inter alia*, violating known and written work rules, sexually harassing a subordinate employee, and disobeying a direct order from a supervisor. We find that all of these grounds fall within the definition of unacceptable personal conduct. Therefore, petitioner was not entitled to oral or written warnings or prior disciplinary action. However, as he contends, petitioner was entitled to a pre-dismissal conference and sufficient notification under N.C. Gen. Stat. § 126-35.

The record shows petitioner was informed of the allegations against him and given a chance to respond in a meeting with Eugene Hightower and Frank Farrell on 17 July 1998. At the meeting, petitioner was asked to submit a written statement in response to the allegations. Petitioner submitted the written statement and had a second meeting with Farrell on 27 July 1998, at which petitioner again denied the allegations against him. Petitioner then received a letter dated 30 July 1998 which set forth in detail the allegations against him and informed him of a predisciplinary conference to be held on 4 August 1998. Following the 4 August predisciplinary conference, petitioner received the dismissal letter, dated 12 August 1998, which set forth the specific acts or omissions supporting his dismissal, as well as his appeal rights. The fact that this notice was given simultaneously with the disciplinary action in this case is not a violation of N.C. Gen. Stat. § 126-35. *See Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 350-51, 342 S.E.2d 914, 922-23 (1986). Based on this record,

we conclude petitioner received the pre-dismissal conference required under 25 N.C.A.C. § 1J.0608(b) and the notification mandated by N.C. Gen. Stat. § 126-35.

[3] Petitioner also contends he was deprived of an impartial and unbiased decision maker because Frank Farrell had reached certain conclusions prior to the predisciplinary conference. A public employee facing an administrative hearing is entitled to an unbiased, impartial decision maker as a requirement of due process. *Id.* at 354, 342 S.E.2d at 924; *see also Crump v. Bd. of Education*, 326 N.C. 603, 615, 392 S.E.2d 579, 585 (1990). "To make out a due process claim based on this theory, an employee must show that the decision-making board or individual possesses a disqualifying personal bias." *Leiphart*, 80 N.C. App. at 354, 342 S.E.2d at 924. Mere familiarity with the facts of a case gained by an agency or individual in the performance of its statutory role does not, however, disqualify, a decision maker. *Id.* at 354, 342 S.E.2d at 925 (citing *Hortonville Dist. v. Hortonville Ed. Asso.*, 426 U.S. 482, 493, 49 L. Ed. 2d 1, 9 (1976).

The record shows that Frank Farrell, the individual who made the initial decision to dismiss petitioner, had reached certain conclusions concerning petitioner's situation as of 30 July 1998, prior to the 4 August 1998 predisciplinary conference. These conclusions were reached after Farrell had conducted an investigation into the allegations against petitioner, including speaking with petitioner on two separate occasions and considering the written statement submitted by petitioner. Following the predisciplinary conference and further investigation, Farrell made the decision to dismiss petitioner. According to the dismissal letter, Farrell had not altered the conclusions he had reached as of 30 July 1998. Accordingly, petitioner contends Farrell could not have been an impartial decision maker. We disagree.

The United States Supreme Court has held that there is no *per se* violation of due process when an administrative tribunal acts as both investigator and adjudicator on the same matter. *Withrow v. Larkin*, 421 U.S. 35, 58, 43 L. Ed. 2d 712, 730 (1975). There is nothing in the record to indicate that Frank Farrell had any disqualifying personal bias against petitioner. The mere fact Farrell was familiar with the facts of petitioner's case and acted as investigator and adjudicator on the matter is not a *per se* violation of due process. *Leiphart*, 80 N.C. App. at 354, 342 S.E.2d at 924-25. Further, in the absence of any evidence that Farrell had a disqualifying personal bias against petitioner,

the fact he had reached conclusions concerning petitioner's situation prior to the predisciplinary conference does not amount to a due process violation. The conclusions Farrell had reached were based on an extensive investigation, which included interviewing numerous individuals familiar with the situation, as well as twice speaking with petitioner and considering petitioner's written statement. Finally, we note that Farrell's decision to dismiss petitioner was subsequently upheld by both the Secretary of the Department of Health and Human Services, H. David Bruton, and the State Personnel Commission. Accordingly, we conclude petitioner has failed to show he was deprived of an impartial decision-making process.

[4] In reversing the Commission, the superior court additionally concluded that its Decision and Order was not supported by substantial evidence. However, having reviewed the whole record, we conclude there was substantial evidence to support the Commission's findings of fact and these findings support the conclusion that petitioner was dismissed for just cause based on unacceptable personal conduct.

In summary, we find substantial competent evidence to support the conclusion that respondent had just cause to dismiss petitioner from his employment for unacceptable personal conduct. In addition, we hold that petitioner's due process rights were not violated during the course of his dismissal. Accordingly, we reverse the trial court's order and remand for reinstatement of the Commission's Decision and Order upholding respondent's dismissal of petitioner.

Reversed and remanded.

Judge MARTIN concurs.

Judge HUDSON dissents in a separate opinion.

HUDSON, Judge, dissenting.

While I agree with the majority that we should remand this case to the superior court, I do not believe that we are in a position to order reinstatement of the Decision and Order of the State Personnel Commission (SPC). Instead, I believe that a remand is appropriate because the order of the superior court does not separately delineate which standard of review it applied to which issue before it. Thus, according to applicable precedent, remand is necessary for the superior court to so delineate, before we may review the merits.

Our appellate Courts have held repeatedly that "[t]he proper standard of review by the trial court [of an administrative appeal] depends upon the particular issues presented by the appeal." *Deep River Citizen's Coalition v. N. C. Dep't of Env't and Natural Res.*, 149 N.C. App. 211, 213 S.E.2d 814, 816 (2002), *citing ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997); *Brooks v. McWhirter Grading Co., Inc.*, 303 N.C. 573, 580, 281 S.E.2d 24, 28 (1981). In *Deep River*, where the trial court simply stated that it was applying the standard of review set forth in the briefs, we remanded to the trial court for delineation of the standard of review applicable to each issue. In so doing, we relied upon the cases cited above, and upon *Hedgepeth v. N.C. Div. of Servs. for the Blind*, 142 N.C. App. 338, 543 S.E.2d 169 (2001), where we held:

> [T]he trial court in the case *sub judice* stated the proper standards of review sought by petitioner. However, it . . . "failed to delineate which standard the court utilized in resolving each separate issue raised." Furthermore, it is difficult to discern whether the trial court actually conducted both a "whole record" and *de novo* review . . . . We are left to question whether [the trial court] referred to only a "whole record" review, *de novo* review, or both . . . . Given the nature of the trial court's order, we find ourselves unable to conduct our necessary threshold review.

*Id.* at 349, 543 S.E.2d at 176 (citations omitted). Here, the order refers to the standard of review only in the introductory paragraph, where it states that it reached its conclusions based "[o]n consideration of the oral arguments, a review of the whole record, and conducting a *de novo* review." Because I do not see a meaningful distinction between the order in this case and the orders in *Deep River* and *Hedgepeth*, I would remand, as we did in those cases, for the trial court to:

> (1) advance its own characterization of the issues presented by petitioners; and (2) clearly delineate the standards of review, detailing the standards used to resolve each distinct issue raised.

*Deep River*, 149 N.C. App. at 215, 560 S.E.2d at 817.